COMMONWEALTH *vs.* PATRICK D. DELANEY.

Hampden. January 7, 1981. — February 19, 1981.

Present: GRANT, CUTTER, & NOLAN, JJ.

*Practice, Criminal,* Disclosure of defense witnesses, Discovery, Pretrial conference. *Alibi.*

The failure of a prosecutor, through carelessness or an error of judgment, to disclose the name of a witness to be called to rebut an alibi defense did not require exclusion of the witness's testimony where the testimony was not significantly prejudicial and was somewhat cumulative, where defense counsel was given an opportunity to confer with the witness before she testified, and where the weight of the other evidence supported the defendant's guilt. [401-405]

INDICTMENTS found and returned in the Superior Court Department on January 9, 1980.

The cases were tried before *Cross, J.*

*Cornelius J. Moriarty, II,* for the defendant.

*John T. McDonough,* Assistant District Attorney, for the Commonwealth.

CUTTER, J. Delaney, seventeen years old during his trial (after transfer of complaints against him as a juvenile) was convicted on indictments charging him with (a) assault upon a young woman (the victim), with intent to rape her, and (b) assault and battery of the victim. Both offenses arose out of the same set of events, all alleged to have taken place on November 14, 1979. At a pretrial conference on January 28, 1980, the defendant agreed to notify the Commonwealth before March 1, "if an alibi defense . . . [was to] be offered," and the district attorney agreed to notify Delaney's counsel before March 1 of the names of the witnesses to be called by the Commonwealth to rebut any alibi defense.

A notice of intention to offer an alibi defense was served on the district attorney on February 28, 1980. The notice stated that Delaney would claim he had been at the Holyoke Adult Learning Center (the Halo Center) at the time of the alleged offense and named two witnesses who would so testify. To these two names, two more were added on March 5. The Commonwealth specified only the victim as a witness to be called at trial.

At the pretrial conference, the parties left blank the space in a typed form of pretrial conference report for specifying the time, date, and place of the alleged offenses. There had been a probable cause hearing in a Juvenile Court on November 29, 1979, and a transfer hearing there on December 13, 1979, but the record does not reveal the testimony there adduced, or that any more precise designation (than the date November 14) was specified as the time of the offense then or at any conference or hearing prior to trial.

At trial the following facts, among others, could have been found. On November 14, about 5:30 P.M., the victim (twenty-five years old, who lived in West Springfield) had boarded a bus standing in front of the Holyoke City Hall. The City Hall Annex is only a block or two from the Halo Center. On the bus, when she entered it, were only two persons, the bus driver and a young man (later identified by her as Delaney). One Amuso, an older man who had known the victim for some months, testified that he boarded the bus after she did. The three were the only passengers and there was some conversation among them. The bus started about 5:45 P.M. bound for West Springfield. The victim left the bus at "roughly six o'clock" at Riverdale Road, West Springfield, near Prospect Street. Delaney left the bus at the next or the second stop after the victim herself left it. When he approached her on the street a few minutes later, the victim permitted him to walk about a mile with her to her house and to enter it for about seven minutes to make a telephone call and to use the bathroom. There was substantial opportunity for about an hour for the victim to observe Delaney, whom she had not known previously.

The testimony indicated that Delaney first left the victim's house and then, about ten minutes later, returned on the excuse that he had left his ring in the bathroom. The victim found no ring and thereafter the young man made an assault upon the victim and unsuccessfully attempted to rape her. The attack took place between 6:20 P.M. and 6:40 P.M. At the West Springfield police station on November 15, the victim identified a photograph of Delaney as that of her assailant.

At trial, Delaney testified that, between 5:10 P.M. and 7 P.M. on November 14, he had been at the Halo Center. This testimony he gave late in the afternoon of the first day of trial.[1]

The following morning the assistant district attorney (prosecutor) called a Holyoke policewoman to testify that she had seen Delaney on a street in Holyoke at 5:15 P.M. on November 14. Delaney's counsel objected to allowing the witness to testify on the ground that the prosecutor admittedly had known of this testimony for some time and, until the preceding afternoon, had not given to him the officer's name as a possible rebuttal witness. See Mass.R.Crim.P. 14(b)(1)(B), 378 Mass. 877 (1979).

The prosecutor represented to the judge that he had not intended to call the policewoman as a witness until he had heard Delaney testify, on the first day of trial, that he had been at the Halo Center all the time between 5:10 P.M. and 7 P.M. on November 14. Theretofore, so the prosecutor stated, all parties consistently had understood the offense to have taken place around 6:30 P.M., and he had not supposed

---

[1] Delaney called two other witnesses. A counsellor of Delaney, who had referred him to the Halo program, testified that he had picked Delaney up at his house and had transported him to the Halo Center on November 14 at 5 P.M. The director of the Center produced a written sign-in sheet for students at the center, upon which (on an "honor system" and largely unsupervised basis) students sign themselves in and out. This sheet for November 14 showed Delaney as having signed himself in at 5:10 P.M. and out at 7 P.M. Delaney was subjected to an extensive cross-examination concerning what he had done and who had seen him at the Halo Center on the 14th.

that the alibi testimony was going "into the time period in which" the policewoman's testimony would be relevant. The trial had started at 10:55 A.M. and, in his opening (probably about 11:15 A.M.), defense counsel had indicated that Delaney would testify that he was at the Halo Center from 5 P.M. to 7 P.M. The testimony of the victim had placed Delaney as on the bus at Holyoke City Hall as early as 5:30 P.M.

The trial judge permitted the policewoman to testify, despite the representations of Delaney's counsel (and the witness's later testimony) that she had been called on the morning of the first day of trial to report to the courthouse early that afternoon, thus indicating that the prosecution then at least was considering having her testify. Her presence, of course, casts doubt on the prosecutor's explanation of his failure to notify defense counsel until he heard Delaney's testimony late in the afternoon of the first day of trial. The judge afforded to Delaney's counsel opportunity to talk with the witness for fifteen minutes before she took the stand. For this purpose a recess was taken, after which the judge heard defense counsel further on the issue of her testimony.

The policewoman then testified that she (while driving in an unmarked cruiser with another officer) had seen Delaney (whom she had known for two years) about 5:15 P.M. on November 14, at a point two miles from the Holyoke City Hall Annex (estimated by her as fifteen to twenty minutes by foot).

Delaney was found guilty. He appealed.

1. The controversy at the close of the trial about the policewoman's testimony may have arisen in part because of (a) the failure at the pretrial conference, see Mass.R.Crim.P. 11(a)(1)(C) and (a)(2)(A), 378 Mass. 863 (1979), to make any specification of the time at which the offense was alleged to have been committed, and (b) the Commonwealth's failure carefully to adhere to the same steps required in the event of a motion under the special procedure, set out in Mass.R.Crim.P. 14 (b)(1)(A), (B), and (C), 378 Mass. 876

and 877 (1979), for obtaining and affording discovery with respect to proposed alibi defenses. The information which the prosecutor had (about the policewoman's observations and his knowledge of the substance of the testimony of witnesses to be called by him) should have led him, well in advance of trial, to give the policewoman's name to defense counsel as a possible rebuttal witness on the alibi issue. His failure to do so (in the light of even the incomplete pretrial conference report) at the least was carelessness or an error of judgment which should not have occurred. In view of the defense opening mentioned above, the tardy disclosure of the witness in any event should have been made at the noon recess on the first day of trial without waiting until the end of the afternoon session.

2. Whatever may have been the cause of the failure of the prosecutor to make an earlier disclosure (assuming that the formal provisions of rule 14[b][1] are applicable at all[2]), the trial judge had a range of discretion. "For cause shown," under Mass.R.Crim.P. 14(b)(1)(E), 378 Mass. 877 (1979), he could "grant an exception to any of the require-

---

[2] The Reporters' Notes which appear in the unofficial editions of the Massachusetts Rules of Criminal Procedure, published in Mass. Ann. Laws, Rules of Criminal Procedure at 301 (Law. Co-op. 1979) and Mass.Gen.Laws Ann., Rules of Criminal Procedure at 246 (West 1980), each contain as the second paragraph the following note to rule 14:

"This rule is based on the concept of reciprocity and has as its aim full pretrial disclosure of items normally within the range of discovery. With the exceptions of mandatory discovery and those cases where a protective order is appropriate, discovery by one side will open the door to full discovery by the other side. *It is emphasized, however, that the formal provisions of this rule are brought into effect only when discovery is initiated through a motion filed under this rule for court-ordered disclosure.* The promulgation of this rule is not intended to discourage those disclosures which may take place at a pretrial conference under Mass.R.Crim.P. 11 or whatever other informal discovery may be agreed upon by the parties." (Emphasis supplied.) The emphasized passage suggests that where, as in this case, no prosecution motion has been filed, Mass.R.Crim.P. 14(b)(1) may not be applicable at all. In view of the pretrial conference commitments, we treat rule 14 as applicable, at least by analogy. See note 3, *infra.*

ments of subdivisions (b)(1)(A) through (D) of" rule 14,[3] which set out with specificity the reciprocal procedures for obtaining discovery concerning a proposed alibi defense.

In two bench conferences preceding the policewoman's testimony, there were general references to rule 14 by both counsel. The judge had observed all the prior witnesses. He was in a far better position than we are (with only a written record) to appraise whether the prosecutor's nondisclosure was intentionally improper or was merely the result of carelessness or bad judgment. If he had thought the nondisclosure intentional, we assume that at the least he would have excluded the offered testimony. It had been represented to him that the policewoman's testimony would be that "she saw . . . Delaney at 5:15 P.M. walking on a street in Holyoke" and, in fact, her testimony amounted to little more than that.[4] The judge could reasonably have regarded (as we do) the evidence against Delaney as very strong, and the possibility of misidentification as very slight. After his talk with the policewoman, defense counsel had pointed out to the judge no particular further investigation of her which he needed time to make.

3. It is obvious from *Commonwealth* v. *Edgerly,* 372 Mass. 337, 343-344 (decided April 11, 1977), that rule 14[5]

---

[3] Under Mass.R.Crim.P. 11(a)(2)(A), 378 Mass. 863, 864 (1979), agreements set out in the written conference report are "binding on the parties and . . . control the subsequent course of the proceeding." Such written agreements may be the equivalent of a "discovery order," thus giving the judge power under rule 14(c)(1) in the event of "failure to comply with any discovery order" to order further discovery, "grant a continuance, or enter such other order as he deems just under the circumstances."

[4] Indeed, her actual testimony could have been viewed as somewhat helpful to Delaney. The policewoman placed Delaney about 5:15 P.M. as "hitchhiking" on a street "fifteen to twenty minutes" of walking time, and "about two miles," from the city hall where the victim had testified that she had seen him on the bus at 5:30 P.M.

[5] The rule, in respect of alibi matters, follows in many respects the Federal Rule of Criminal Procedure 12.1 (1975). Subparagraph (e) of the Federal rule 12.1, differs from the Massachusetts rule 14(b)(1)(E) principally in the use of the words "[f]or good cause shown," rather than "[f]or cause shown," the words used in the Massachusetts clause (E).

with respect to reciprocal alibi discovery has been carefully framed to assure a fair procedure, meeting fully the standards suggested for such discovery in *Wardius* v. *Oregon*, 412 U.S. 470, 474-479 (1973). Strict compliance in good faith with the procedure outlined in the rule, finally adopted in Massachusetts on October 19, 1978, effective July 1, 1979, is the necessary method of assuring that the rule will operate fairly. Adherence to the sequence of steps to be taken by the parties and to the prescribed time limits, all as set out in the rule, will prevent confusion of the type which arose in this case. The discussion in *Commonwealth* v. *Hanger*, 377 Mass. 503, 508-510 (1979), shows the importance attached to timely knowledge (by both the prosecution and the defense) of the witnesses to be heard on an alibi issue, so as to permit adequate investigation of them. See also *Commonwealth* v. *Blodgett*, 377 Mass. 494, 498-502 (1979).

4. We have not been referred to any detailed discussion of Mass.R.Crim.P. 14(b)(1)(E) in any Massachusetts decision. We regard clause (E) as designed to give to the trial judge (in the event that compliance with rule 14 has been incomplete) discretion to exercise judgment and common sense in applying the rule flexibly and fairly in the trial. On considerably more complicated facts, one Federal decision has construed the "good cause shown" requirement of the Federal counterpart of rule 14(b)(1)(E), see note 5, *supra*, somewhat more strictly and inflexibly. See *United States* v. *Myers*, 550 F.2d 1036, 1039-1043 (5th Cir. 1977), *S.C.*, 572 F.2d 506 (5th Cir.), cert. denied, 439 U.S. 847 (1978). See also *United States* v. *Floyd*, 555 F.2d 45, 48 n.7 (2d Cir.), cert. denied, 434 U.S. 851 (1977). Compare *United States* v. *White*, 583 F.2d 899 (6th Cir. 1978).

On the facts of the *Myers* case, its result may have been correct. There are, however, intimations in the discussion (at 1042 to 1043) which tend unduly, in our opinion, to restrict the discretion of the trial judge which the plain language of at least the Massachusetts rule purports to confer.

Even applying the principles laid down in the *Myers* case (at 1043) for a Federal trial judge to employ in "determining

how to exercise . . . discretionary power," we think the trial judge in the present case acted within the scope of his discretion. The *Myers* case says the trial judge "should consider (1) the amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case." *Id.* We perceive no significant prejudice from the policewoman's testimony, which indeed (see note 4, *supra*) had aspects somewhat favorable to Delaney. The victim and another passenger on the bus had already by their testimony placed Delaney on the bus and thus elsewhere than at the Halo Center at 5:30 P.M., so in a sense the policewoman's testimony was somewhat cumulative. The trial judge did not make any written finding about the cause of the prosecutor's nondisclosure but he would have been warranted in finding it to be carelessness or bad judgment, to some extent mitigated by defense counsel's opportunity to confer with the witness. That opportunity was less than the *Hanger* case, 377 Mass. at 509, seems to have contemplated, but it is significant that Delaney's counsel (after talking with the policewoman) failed to point to any specific need or usefulness of further investigation by him of her or her story. The great weight of the properly admitted evidence supported Delaney's guilt. General considerations in favor of receiving evidence, likely to be both relevant and probative, could reasonably be taken into account by the judge. There was no error in the trial judge's ruling.

*Judgments affirmed.*