COMMONWEALTH vs. LEON EASTERLING.

Suffolk.   May 12, 1981. — July 7, 1981.

Present: HALE, C.J., GRANT, & SMITH, JJ.

*Evidence*, Relevancy and materiality, Previous testimony of unavailable witness.  *Witness*, Unavailability, Privilege.  *Practice, Criminal*, Argument by prosecutor.

At the trial of a defendant charged with the murder of a Harvard football player following an annual team dinner, the defendant was not prejudiced by the brief testimony of either the victim's father or the dean of students of Harvard College. [228]

At a murder trial, there was no error in the admission of the testimony of two physicians and a medical examiner as to the victim's treatment and care after he had been stabbed, and as to the cause of his death which occurred a month after the stabbing. [228]

On retrial of a murder case, there was no error in the admission in evidence of a transcript of a witness's testimony given at the earlier trial at which the defendant had had the opportunity to cross-examine her since, at the second trial, the witness was unavailable by reason of claiming her Fifth Amendment privilege. [228-229]

At the trial of a defendant charged with murder during an affray which occurred after a woman apparently stole a wallet from a man in the "Combat Zone" area of downtown Boston, there was no error in the admission of evidence explaining the modus operandi of female pickpockets and their accessories in the "Combat Zone." [229-230]

In a prosecutor's final argument at a murder trial, his descriptions of the victim's wounds and death were based on the evidence and were not unduly graphic. [230]

INDICTMENT found and returned in the Superior Court on December 17, 1976.

After review by the Supreme Judicial Court, *Commonwealth* v. *Soares*, 377 Mass. 461 (1979), the cases were tried before *McGuire*, J.

*Kimberly Homan* for the defendant.

*Thomas Mundy*, Assistant District Attorney (*M. Catherine Huddleson*, Special Assistant District Attorney, with him) for the Commonwealth.

HALE, C.J.  The defendant appeals from a conviction of manslaughter after a jury trial in the Superior Court in which he and two other persons were charged with first degree murder.  The defendant was also charged with assault and battery with a dangerous weapon on one Lincoln.  The codefendants were acquitted, as was the defendant on the assault and battery charge.

For present purposes it need only be stated that from the evidence it would appear that a group of Harvard football players, following a dinner that traditionally marked the end of the football season, went to the part of downtown Boston known as the Combat Zone.  There they were intercepted by several women, one of whom apparently stole the wallet of one of their number.  After some frenetic activity which involved the defendant and others, the defendant, on his own testimony, stabbed one Lincoln and in a second altercation twice stabbed one Puopolo.  The defendant testified that in both instances in which he stabbed a student, he was intervening on another's (Soares') behalf in a fight or potential fight, in which he (the defendant) perceived Soares to be outnumbered.  The defendant further testified that the first time he stabbed Puopolo, he had lunged at him and that the second time, he "was swinging with the knife wildly."  The medical examiner testified that an autopsy revealed that Puopolo received only two stab wounds, both in the chest.  One extended into a lung and the other into his heart.  It was the stab to the heart that caused death.[1]  The defendant raises five issues on appeal.  We deal with them seriatim.  In doing so, we are mindful that the rulings and actions of the trial judge and the statements of the prosecutor were made in the context of a trial of three persons on charges of first degree murder.  We also observe that on the

_____

[1] The evidence is substantially the same as that summarized in greater detail in *Commonwealth* v. *Soares*, 377 Mass. 461, 464-469 (1979).

basis of the defendant's testimony and that of the medical examiner, the jury were warranted in returning a verdict of guilty of at least manslaughter.

1. We reject the defendant's claim that the testimony of the victim's father was inherently prejudicial. *Commonwealth* v. *Nassar*, 354 Mass. 249, 257-258 (1968), cert. denied, 393 U.S. 1039 (1969). *Commonwealth* v. *Chung*, 378 Mass. 451, 452 n.1 (1979); *Commonwealth* v. *Chasson*, 383 Mass. 183, 185-186 (1981). The father's testimony was covered in a brief portion (less than six pages) of an eighteen-volume transcript, and most of it was relevant. There were no objections to particular questions asked, which is understandable, as any testimony that was not relevant was innocuous. See *Chasson*, *supra* at 185-186. Similarly, we reject the defendant's argument that he was prejudiced by the testimony of Archie Epps, the dean of students of Harvard College. His testimony covered only four pages of the transcript, and no objection was raised during it. While the topics covered in the testimony (the victim's attendance at Harvard and the circumstances of the annual team dinner) were of marginal relevance, we fail to see how the defendant could have been harmed, particularly as other witnesses testified concerning those topics without objection. *Commonwealth* v. *Bailey*, 370 Mass. 388, 393 (1976).

2. The defendant claims error in the admission of the testimony of two physicians and the medical examiner as to the victim's treatment and care after the stabbing, and as to the cause of his death, which occurred a month after the incident. Such evidence was relevant. See *Commonwealth* v. *Golston*, 373 Mass. 249, 251-257 (1977), cert. denied, 434 U.S. 1039 (1978). The admission of this testimony was well within the judge's discretion. There is nothing in *Commonwealth* v. *Bastarache*, 382 Mass. 86, 105-106 (1980), which aids the defendant on this question.

3. The defendant argues that the admission in evidence (by reading to the jury) of the transcript of the testimony of one Cassandra McIntyre given at the first trial on these indictments was error. We consider the point although our

reading of that testimony leaves us wondering what possible harm it could have caused the defendant.

The witness was unavailable after she claimed her Fifth Amendment rights and, on advice of counsel, refused to answer any questions during a voir dire examination, except as to her name, address, and birthdate, it having been conceded by the prosecutor that he would ask her incriminating questions. *Commonwealth* v. *Canon*, 373 Mass. 494, 499-501 (1977), cert. denied, 435 U.S. 933 (1978). *Commonwealth* v. *DiPietro*, 373 Mass. 369, 380-386 (1977). The introduction of the prior testimony was proper, as the defendant had had an opportunity to cross-examine the witness at the prior trial. *Commonwealth* v. *Gallo*, 275 Mass. 320, 328-335 (1931). *Commonwealth* v. *Mustone*, 353 Mass. 490, 492 (1968). *Commonwealth* v. *Clark*, 363 Mass. 467, 470-471 (1973). *Mancusi* v. *Stubbs*, 408 U.S. 204, 213-214 (1972). That the witness was not represented by counsel during the prior trial and was not informed of her right against self-incrimination does not render her testimony unreliable as matter of law. Her testimony was given in a trial context identical to the present, where competent attorneys for the three defendants had the opportunity fully to cross-examine the witness or to waive such examination, as each in his individual judgment deemed best. See *Ohio* v. *Roberts*, 448 U.S. 56, 63-64 n.6 (1980). See also *Commonwealth* v. *Simpson*, 370 Mass. 119, 121 (1976); *State* v. *Anderson*, 409 A.2d 1290, 1302 (Me. 1979).

4. Evidence was introduced to explain the modus operandi of female pickpockets (and their accessories) in the "Combat Zone ripoff." The evidence was to the effect that several female pickpockets, sometimes called "robber whores," would confront a male victim on the street and distract him with physical contact and offers of sexual favors as they "lifted" the victim's wallet. If the victim realized what was happening and started to resist the women, a man or men would intercede to protect them. Such evidence was relevant on at least two scores: as evidence of a joint venture in which the jury could have found

the defendant was engaged (see *Commonwealth* v. *Campbell*, 5 Mass. App. Ct. 571, 588 [1977]; *Commonwealth* v. *Soares, supra* at 472; see *Commonwealth* v. *Tatro*, 4 Mass. App. Ct. 295, 297 [1976]) and as background information, necessary to the jury's understanding of the testimony of the bizarre events that unfolded before them. *Commonwealth* v. *Harris*, 376 Mass. 201, 207 (1978).

5.  The prosecutor's descriptions, in his final argument, of the victim's wounds and death were based on the evidence and inferences appropriately drawn from it (*Commonwealth* v. *Hoffer*, 375 Mass. 369, 378 [1978]) and were not unduly graphic. See *Commonwealth* v. *Johnson*, 374 Mass. 453, 460 (1978). There were statements made during the prosecutor's final argument to which no objection was made and which the defendant now contends were error. They are not properly before us for review. *Commonwealth* v. *Earltop*, 372 Mass. 199, 203 (1977). The only statement by the prosecutor which even approached improper argument was his characterizations as "a lot of baloney" an argument which counsel for the defendant had advanced to the jury. Neither this nor any of the other statements now argued as improper created any risk of a miscarriage of justice. Compare *Commonwealth* v. *Earltop, supra* at 203-204; *Commonwealth* v. *Daigle*, 379 Mass. 541, 549 (1980); *Commonwealth* v. *Wright*, 11 Mass. App. Ct. 276, 281 (1981). Contrast *Commonwealth* v. *Coleman*, 366 Mass. 705, 713-714 (1975). See *Commonwealth* v. *MacDonald (No. 1)*, 368 Mass. 395, 402 (1975).

*Judgment affirmed.*