COMMONWEALTH *vs.* MARK A. LAFRENNIE. March 10, 1982. LaFrennie has appealed his conviction upon one of three counts alleging rape. His conviction for assault and battery was placed on file with LaFrennie's consent. Trial took place in the Superior Court before a District Court judge (sitting by statutory authority) and a jury. A summary statement of circumstances, which the jury reasonably could have found, appears below.

LaFrennie, then about twenty-two years old, on Saturday, August 16, 1980, was driving in a borrowed automobile with Robert Johnson, then sixteen years old, and another young man named Barry, in Jaffrey, New Hampshire. About 8:45 P.M. they encountered the victim, then also sixteen years old and a high school junior, riding to her parents' house on her bicycle. Johnson had known her for about a month. He invited her to ride with them. She accepted but said that she would "have to be home . . . no later than 9:30." She then left her bicycle behind the Jaffrey police station, and sat with Johnson in the back seat of the automobile.

They drove to Rindge, New Hampshire. There Barry left them. They went to Gardner, Massachusetts, where LaFrennie and Johnson went into a bar, leaving the victim in the automobile. The victim asked to be taken home but, when Johnson emerged, went into the bar with him. LaFrennie either had left or soon did leave for another bar not far away. Later Johnson and the victim found LaFrennie in a third bar. There, after 11:15 or 11:30 P.M., she asked again to be taken home. They then proceeded to Winchendon, Massachusetts, the victim sitting between LaFrennie and Johnson on the front seat. She asked to be taken home once more. By then it was about midnight to 12:45 A.M. The automobile was placed in a parking lot near Curve In, a bar in Winchendon not far from Johnson's house. LaFrennie went into the bar while the victim and Johnson remained outside. Both Johnson and the victim at some time

entered the bar. The victim told LaFrennie that she had to go home. Johnson and the victim left Curve In before 1:00 A.M. and waited for LaFrennie. He emerged after some delay.

After discussion between LaFrennie and Johnson, Johnson walked home and LaFrennie undertook to drive the victim to Jaffrey. Instead of doing so, he drove her to a deserted dirt road near the Massachusetts-New Hampshire boundary and forced her to have intercourse with him three times. In the course of this episode, he struck her and gave her a bloody nose.

The victim eventually managed to reach a house "about a mile" away. There she awoke a woman who was the town clerk and tax collector of Winchendon. She and her husband called the police and accompanied the victim to a hospital.

The victim's testimony and that of Johnson, disputed by LaFrennie, was that the victim did not drink any alcoholic beverages during the time that they were together. Johnson admitted that he had done some drinking during the evening. He and the victim both testified that he had kissed the victim (but that there was no other contact) while in the back seat of the automobile with her waiting for LaFrennie outside a bar. The evidence indicated that LaFrennie drank beer and also coffee brandies at various times during the evening. LaFrennie's testimony in many respects was consistent with that of the victim and Johnson up to the point of his talk with the victim and Johnson at the Curve In.

1. LaFrennie's principal contention was that he did not see the victim and Johnson after they left him at the Curve In bar where he remained until about 1:30 A.M. and that he then went elsewhere alone. He called two alibi witnesses. One was his twin brother, who claimed to have seen LaFrennie at their aunt's house in Winchendon at 3:15 A.M. on Sunday morning, August 17. The other alibi witness was Judy Hurley, a waitress at the Curve In, who testified that she heard LaFrennie refuse to take the victim home about midnight, and saw him leave the Curve In, in his borrowed automobile apparently alone, about 1:30 A.M. and again at her own apartment in Winchendon from about 2:30 A.M. to 3:00 A.M.

On the third day of the trial, after one alibi witness had testified and during the testimony of the other, LaFrennie's counsel told the trial judge that a new alibi witness, whose testimony he wished to present, had come forward. The prosecuting attorney, who had first learned of this witness five minutes earlier, objected on the ground that defense counsel in the pretrial conference report had agreed to notify the Commonwealth "on or before 10 days before trial of the place or places as [*sic*] which the defendant claims to have been at the time of the alleged offense and the names and addresses of the defendant's alibi witnesses." Defense counsel conceded that LaFrennie had "been talking about [the proposed witness who was apparently present at the courthouse] in the past" and that counsel had been "unsuccessful in locating her." He made no specific offer of

proof of what the proposed witness's testimony would be, nor was her name disclosed on the record, but only the fact that she was from Gardner.

The judge reasonably, in the exercise of his discretion, denied the motion to be allowed to call the witness. In this he had the support of the pretrial conference report, the lateness of the request, the absence of any indication of what the requested witness would say or of any showing from which prejudice to LaFrennie could be inferred. It is worth noting that strong evidence had been received by that time concerning LaFrennie's movements on the night of the offense. See Mass.R.Crim.P. 11(a) (2); 14(b) (1), and (c), 378 Mass. 863, 876, 880. See *Commonwealth* v. *Delaney*, 11 Mass. App. Ct. 398, 401-405 (1981); *United States* v. *White*, 583 F.2d 899, 901-902 (6th Cir. 1978). See also *Commonwealth* v. *Edgerly*, 372 Mass. 337, 341-345 (1977); *United States* v. *Myers*, 550 F.2d 1036, 1043 (5th Cir. 1977). Compare *Commonwealth* v. *Hanger*, 377 Mass. 503, 508-513 (1979); *United States* v. *Davis*, 639 F.2d 239, 242-243 (5th Cir. 1981).

2. Defense counsel (who was not counsel at trial) contends that the judge's charge was defective in various respects. The charge, indeed, was unnecessarily long, repetitious, and diffuse but, viewed as a whole, it was adequate to inform the jury of the elements of the crime charged. The trial judge had before him an inexperienced jury. Some general explanation to them was permissible. He made errors of statement on occasion but duly corrected himself. He gave, so far as appears, most (if not all) of the instructions requested in behalf of LaFrennie. At the close of his charge, he gave one requested instruction which defense counsel thought he had omitted and, when defense counsel suggested that the judge had given undue emphasis to the principle of "fresh complaint" as compared with the discussion of alibi testimony, the judge promptly told the jury that he did not "mean to accentuate or emphasize any part of . . . [his] charge." In the absence of other objections to the instructions, we need consider only whether the charge created a "substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Bertrand*, 385 Mass. 356, 361 (1982). In the light of the strength of the evidence against LaFrennie, there is no such likelihood.

3. The judge properly allowed the indictment to be amended when the alert jury, during its deliberations, called to his attention the fact that the indictment stated the date of the rape as August 18, 1980. It was clear from all the evidence that the offense was committed early on Sunday morning, August 17. Defense counsel had proceeded throughout the trial and had asked questions on the basis of the correct date. There was no prejudice to LaFrennie. See Mass.R.Crim.P. 4(d), 378 Mass. 849 (1979); *Commonwealth* v. *Jones*, 12 Mass. App. Ct. 489, 491-492 (1981), and cases cited. See also *Commonwealth* v. *Liebman*, 379 Mass. 671, 676 (1980).

4. The judge reasonably exercised his discretion to limit cross-examination of the victim (a) as to her worries about her family's concern at her being out late, and (b) as to her conduct with Johnson that evening, as to which the judge conducted a voir dire. See G. L. c. 233, § 21B. Earlier and subsequent inquiry of the victim and of Johnson brought out essentially everything developed on the voir dire which would tend to show bias by either witness against LaFrennie or to suggest that the victim's fear of parental disapproval might lead her to make a false charge against him. Contrast *Commonwealth* v. *Joyce*, 382 Mass. 222, 230-232 (1981), and the limiting interpretations of that case in the concurring opinions (at 232-233). Contrast also *Commonwealth* v. *Martinez*, 384 Mass 377, 380-381 (1981). Inquiries about events subsequent to the offense were properly excluded as irrelevant.

5. The judge reasonably restricted as irrelevant defense counsel's questions to his client concerning his educational background. The jury had full opportunity to observe LaFrennie and his difficulty in answering questions which the holder of a high school diploma should have been able to answer easily. He had admitted he had been married, was divorced, and had a child, and also admitted that he did not "know how to spell." Defense counsel told the judge in a bench conference that LaFrennie was "moderately mentally retarded." He had been examined by a doctor to determine whether he had "criminal responsibility," and "competence to stand trial." The reports on these matters are not in the record, but, at a bench conference, the judge was told that LaFrennie had been adjudged competent to stand trial. No defense on the ground of lack of criminal capacity was attempted at or before trial. The educational background of LaFrennie was not directly an issue. Compare *Commonwealth* v. *Daniels*, 366 Mass. 601, 609 (1975). He was not prejudiced by being denied, on direct examination, opportunity to impeach his own credibility and capacity to observe and remember events. See discussion in *Commonwealth* v. *Sacco*, 255 Mass. 369, 439 (1926); Liacos, Massachusetts Evidence 144 (5th ed. 1981).

6. A certificate of analysis by a chemist of the Department of Public Safety was properly admitted in evidence under G. L. c. 147, § 4F, inserted by St. 1972, c. 252, to show the presence of seminal fluid in the crotch area of blue corduroy slacks worn by the victim on the night of the rape and of sperm cells on slides of three vaginal smears taken at the hospital. The certificate was not rendered inadmissible because it also referred to blood stains, particularly where, through the witness that produced it, it was brought out that the report did not specify whose blood and sperm cells were found on the blue slacks. See *Commonwealth* v. *Foley*, 12 Mass. App. Ct. 983, 984 (1981).

*Judgment affirmed.*

*Conrad W. Fisher* for the defendant.
*Joseph C. McGinn*, Assistant District Attorney, for the Commonwealth.