COMMONWEALTH *vs.* JOHN J. SCALLEY.

Middlesex.  April 19, 1983. — December 14, 1983.

Present: BROWN, ROSE, & DREBEN, JJ.

*Practice, Criminal,* Disclosure of evidence.  *Evidence,* Prior conviction.

The prosecution at an assault trial was not constitutionally required, in
the absence of a specific request, to disclose to the defendant the first
name of a woman who had allegedly assaulted the same victim earlier
on the evening of the crimes where, in light of the compelling evidence
against the defendant and the facts already known to him, the disclo-
sure would not have been capable of creating a reasonable doubt as to
his guilt. [227-229]

At a criminal trial there was no abuse of discretion in the judge's permit-
ting testimony by a prosecution witness whose name was not disclosed
to the defense in compliance with a pretrial agreement, where the
prosecution disclosed its intention to call the witness on the day it
learned of her existence and where prejudice to the defendant did not
appear. [230-231]

At the trial of indictments for assault and battery by means of a dangerous
weapon and assault with intent to commit rape, the judge's permitting
the prosecution to use, for impeachment purposes, the record of the
defendant's prior conviction of kidnapping presented no issue for
review. [231-232]

INDICTMENT found and returned in the Superior Court
Department on December 9, 1980.

The case was tried before *Kelley, J.*

*Edward J. McCormick, III,* for the defendant.

*Ellen Lewis Bane,* Assistant District Attorney, for the
Commonwealth.

ROSE, J.  The defendant was convicted of assault and bat-
tery by means of a dangerous weapon (shod foot), G. L.
c. 265, § 15A, and assault with intent to commit rape,
G. L. c. 265, § 24, on April 13, 1982.  The defendant ap-
peals, contending that: (1) the Commonwealth delayed in

disclosing allegedly exculpatory evidence, thus denying him due process of law, see *Commonwealth* v. *Wilson,* 381 Mass. 90, 107 (1980); (2) the trial judge abused his discretion in allowing the Commonwealth to call a witness whose name was not disclosed prior to trial, in violation of a discovery agreement, see Mass.R.Crim.P. 14(c), 378 Mass. 880 (1979); and (3) the trial judge erred in allowing the Commonwealth to use the defendant's prior kidnapping conviction to impeach his testimony. We affirm the convictions.

The Commonwealth presented evidence tending to show the following. On the evening of November 24, 1980, the complainant, a woman in her late twenties, went to a bar in the Davis Square area of Somerville with a man named Paul.[1] At the bar, the complainant unintentionally created some antagonism between herself and another female patron, known to her only as "Audrey." The two stepped outside where Audrey struck the complainant in the face and knocked her to the ground. After this incident, the complainant had a disagreement with Paul and left to walk to her home in the Central Square area of Cambridge at approximately 1:00 or 1:30 A.M. At that time, her face appeared "normal."

While the complainant was walking along Massachusetts Avenue in Cambridge, between Porter Square and Harvard Square, she noticed a green sedan driven by the defendant pass her several times. Finally, the complainant approached the car and told or shouted at the defendant to leave her alone. Shortly thereafter she began to run, attempting to evade the defendant by running along side streets and alleys. The defendant abruptly stopped his car at a curb, causing the tires to screech, alighted, and followed the complainant. He came up behind her in a flood-lit alley behind an apartment building and grabbed her coat collar. To the complainant's question, "What do you want?" the defendant responded, "You know what I

---

[1] There was evidence that Paul was deceased at the time of trial.

want." He struck her and she fell or was knocked to the ground. The complainant screamed loudly and constantly and attempted to kick the defendant while she lay on the ground. The complainant's screaming awakened several residents in the apartment building, one of whom went to a window and witnessed the defendant kicking the complainant in the area of the ribs and abdomen while she lay on the ground. At least two other residents summoned the police. The struggle between the defendant and the complainant was halted by a passerby who had observed the defendant follow the complainant behind the apartment building, heard the complainant's screams, and hurried to the scene. He apprehended the defendant and the complainant fled, still screaming. The passerby restrained the defendant until the police arrived. There was evidence that, at some point during the incident, the complainant's dress was ripped nearly in half.

The defendant, testifying in his own defense, offered the following account of his encounter with the complainant. While the defendant was driving along Massachusetts Avenue, the complainant attracted his attention because her face was "shady red and puffy" and her gait, irregular. He drove past her a few times and stopped to see whether she needed a ride or help. When he stopped, the complainant approached the car, screamed at him, scratched his face, and reached into the car in an attempt to pilfer personal or business papers, or so the defendant thought. Then she walked away. The defendant stopped his car and followed the complainant into an alley behind an apartment building to retrieve his papers. The defendant was referring to those papers when he told the complainant, "You know what I want." He slapped the complainant's face only once, after she had struck him, and at no time did he kick her. He did not rip her dress.

The defendant called the passerby as a witness. The passerby corroborated that portion of the defendant's testimony indicating that the complainant's face appeared bruised before her encounter with the defendant behind

the apartment building. His testimony was otherwise basically consistent with the evidence presented by the Commonwealth.[2]

1. The defendant contends that despite his timely request, the Commonwealth delayed the disclosure of certain exculpatory evidence which, if disclosed sooner, would have enabled him to prepare a defense creating a reasonable doubt which did not otherwise exist.[3] See *Commonwealth* v. *Wilson*, 381 Mass. at 114; *Commonwealth* v. *St. Germain*, 381 Mass. 256, 263 (1980). Specifically, the defendant contends that the Commonwealth knew that "Audrey" was the first name of the person who assailed the complainant earlier on the evening of the alleged crimes,[4] but failed to disclose that to the defendant until the beginning of trial.[5]

---

[2] The passerby testified that he did not see the defendant strike or kick the complainant. However, the testimony of an eyewitness called by the Commonwealth indicated that the passerby had arrived after those actions.

[3] In his motion, the defendant requested:

". . . (1) any evidence that can be used for the purpose of impeaching the credibility of witnesses that the Commonwealth intends to rely upon in support of the matters referred to in the Indictment, (2) statements which would reasonably tend to show that the accused did not commit the offense charged, (3) evidence which would reasonably tend to show that the accused did not commit the offense charged, (4) statements which are inconsistent with statements made by parties other than the declarant, (5) inconsistent statements made by a declarent [sic] to law enforcement officers, and (6) prior inconsistent statements from those testified to during the course of the trial."

We view the defendant's request as a general one. See *Commonwealth* v. *Wilson*, 381 Mass. at 109-110 & n.40; *Commonwealth* v. *Jackson*, 388 Mass. 98, 110 (1983). We note that the defendant might easily have framed a specific request for the evidence in question. See note 5, *infra*. Cf. *Commonwealth* v. *Salemme*, 11 Mass. App. Ct. 208, 222 & n.13 (1981).

[4] The record contains conflicting evidence with respect to the Commonwealth's knowledge of the name before trial. The trial judge made no finding on that issue.

[5] At trial, defense counsel asserted that he had had no knowledge of the earlier incident in Davis Square prior to the direct examination of the

Earlier disclosure of this evidence, the defendant asserts, would have enabled him to locate the earlier assailant and secure her testimony that she, not the defendant, had caused all of the complainant's documented injuries, thus entirely exculpating the defendant of any assault and battery upon the complainant.[6]

We consider, first, whether disclosure of the first name of the earlier assailant was constitutionally required in the absence of a specific request.[7] See *United States* v. *Agurs*, 427 U.S. 97, 106-107 (1976). Disclosure was required if, in light of the entire record, the evidence in question was "capable of creating 'a reasonable doubt that did not otherwise exist.'" *Commonwealth* v. *Wilson*, 381 Mass. at 110, quoting from *United States* v. *Agurs*, 427 U.S. at 112. See *Commonwealth* v. *Pisa*, 372 Mass. 590, 594-595, cert. denied, 434 U.S. 869 (1977). "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand,

---

complainant. However, the trial judge found that defense counsel had been aware of the earlier incident before trial and had failed to request a continuance. The record supports his finding. The assistant district attorney represented that he had informed defense counsel of the Davis Square incident when he had become aware of it, some two to four months before trial. Defense counsel's opening statement, made prior to the complainant's testimony, reflects his knowledge of the earlier incident. The transcript of proceedings at the pretrial conference on April 9, 1981, one year earlier, reflects defense counsel's knowledge that: (1) witnesses saw that the complainant's face was bruised before her encounter with the defendant on the evening of the alleged crimes; and (2) on the same evening, "the lady [the complainant] did have a problem in the City of Somerville before walking home from Davis Square."

[6] The defendant's assertion is contingent upon the validity of several speculations: (1) that the defendant would have been able to locate the earlier assailant; (2) that the earlier assailant's testimony would have established her responsibility for the complainant's injuries; (3) that the earlier assailant would not have invoked her Fifth Amendment privilege if the defendant had called her as a witness; and (4) that the jury would have discounted a disinterested eyewitness' testimony that he saw the defendant kicking the complainant. Cf. *Commonwealth* v. *Redding*, 382 Mass. 154, 156 (1980).

[7] See note 3, *supra*.

if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *United States* v. *Agurs*, 427 U.S. at 112-113.

In light of the compelling weight of the Commonwealth's case against the defendant, the evidence in question was not capable of creating a reasonable doubt about the defendant's guilt. See *Commonwealth* v. *Wilson*, 381 Mass. at 110-112; *Commonwealth* v. *St. Germain*, 381 Mass. at 263-265. The Commonwealth presented several disinterested witnesses, one of whom, under excellent lighting conditions, from a short distance above, observed the defendant kicking the prostrate complainant in the region of the ribs and abdomen. Even if the defendant had known more details of the earlier altercation, this would not have created any doubt about the defendant's subsequent assault and battery on the complainant with his shod·foot. Since evidence of the earlier altercation was introduced at trial and previously known to the defendant, the first name of the assailant added nothing material. The name was ". . . embellishing of facts otherwise known to the defense." *United States* v. *Agurs*, 427 U.S. at 109 n.16, quoting from *Giles* v. *Maryland*, 386 U.S. 66, 98 (1967) (Fortas, J., concurring).

Because we conclude that disclosure of the evidence in question was not constitutionally required in the absence of a specific request, see *United States* v. *Agurs*, 427 U.S. at 107-108; *Commonwealth* v. *Wilson*, 381 Mass. at 109, there is no need to consider the effect, if any, of the delay in disclosure. See *United States* v. *Agurs*, 427 U.S. at 112-114; *Commonwealth* v. *Adrey*, 376 Mass. 747, 754-755 (1978); *Commonwealth* v. *Wilson*, 381 Mass. at 114. However, we note that defense counsel made good use of all of the evidence relating to the earlier incident in final argument, suggesting to the jury that the complainant was attempting to hold the defendant responsible for an assault and battery committed by a "mystery woman" named Audrey. Cf. *Commonwealth* v. *Adrey*, 376 Mass. at 755; *Commonwealth* v. *St. Germain*, 381 Mass. at 265.

2. The defendant contends that the trial judge abused his discretion in allowing the Commonwealth to call a witness whose name was not disclosed to the defendant prior to trial, in violation of a pretrial discovery agreement incorporated in a pretrial conference report.[8] The witness in question is Sarah Bulger, a resident of the apartment building abutting the alley where the crimes allegedly took place.

The Commonwealth included Bulger's name on the list of witnesses submitted to the court and defense counsel on the day that the jury were empaneled. Defense counsel objected four days later, when Bulger was called to the stand.[9] The Commonwealth represented that its first knowledge of Bulger came when she appeared in court with her mother, who was to be a witness, on the day that the jury were empaneled; that it had decided to call Bulger as a witness on that day; and that it had promptly disclosed its intention to defense counsel that same day. The trial judge overruled the defendant's objection.

Bulger offered testimony that, on the night of the alleged crimes, she was awakened by a woman's constant screaming. She went to a window overlooking the alley but could not see the disturbance. When she observed the complainant running from the alley, she called the police. Bulger's testimony only corroborated other evidence introduced by the Commonwealth and was thus cumulative.

The trial judge did not abuse his discretion in allowing Bulger to testify over the defendant's objection. The defendant has not shown that the Commonwealth violated the

_____

[8] Agreements set out in the written pretrial conference report are binding on all parties. Mass.R.Crim.P. 11(a)(2)(A), 378 Mass. 863 (1979). "Such written agreements may be the equivalent of a 'discovery order' . . . ," *Commonwealth* v. *Delaney*, 11 Mass. App. Ct. 398, 403 n.3 (1981), and thus subject to the trial judge's reasonably wide discretion to make such orders as he deems just or to impose sanctions in the event of noncompliance with discovery orders, under Mass.R.Crim.P. 14(c)(1) and (2), 378 Mass. 880 (1979). Cf. *Commonwealth* v. *Lapka*, 13 Mass. App. Ct. 24, 31 (1982).

[9] Defense counsel never requested an opportunity to confer with the witness before she testified.

discovery agreement. The Commonwealth disclosed its intention to call Bulger as a witness on the day it first gained knowledge of her existence. See *United States* v. *Oliver,* 570 F.2d 397, 401 (1st Cir. 1978). The defendant does not contend otherwise. See *Commonwealth* v. *Cundriff,* 382 Mass. 137, 149 (1980); *Commonwealth* v. *Whitehead,* 379 Mass. 640, 660 (1980). Compare *Commonwealth* v. *Delaney,* 11 Mass. App. Ct. 398, 400-401 (1981). In any event, the defendant does not contend that he was prejudiced by the alleged discovery agreement violation, nor would the record support such a contention. Cf. *Commonwealth* v. *Cundriff,* 382 Mass. at 151; *Commonwealth* v. *Edgerly,* 13 Mass. App. Ct. 562, 571 (1982). Absent a showing of prejudice and a showing of how a second trial would substantially remedy such prejudice, we cannot conclude that there was error entitling the defendant to a new trial. *Commonwealth* v. *Cundriff, supra* at 151. *Commonwealth* v. *Davis,* 13 Mass. App. Ct. 179, 185 (1982). See *Commonwealth* v. *Delaney,* 11 Mass. App. Ct. at 403-405.

3. The defendant contends that the trial judge erred in allowing the Commonwealth to use a prior kidnapping conviction to impeach the defendant. Before trial, the defendant filed a motion in limine for exclusion of the defendant's four prior convictions: speeding, assault with intent to rape, operating a motor vehicle under the influence of intoxicating liquor, and kidnapping. The judge ruled that, if the defendant testified, the kidnapping and operating under the influence convictions would be allowed in evidence, but that the speeding and assault with intent to rape convictions would not be. See G. L. c. 233, § 21. There was no error.

Although we acknowledge "'the right of a judge to avoid any question of unfairness by excluding such [prior conviction] evidence in a situation where the likely prejudice to the defendant is most intense' . . . the refusal of a trial judge to exercise the 'right' . . . is not a basis for appeal." *Commonwealth* v. *Diaz,* 383 Mass. 73, 80 (1981) (quoting *Commonwealth* v. *Chase,* 372 Mass. 736, 750 [1979]). More-

over, the trial judge gave appropriate and adequate limiting instructions to the jury in his final charge.

*Judgments affirmed.*