## Commonwealth *vs.* Lewis R. Pope.

Hampden.    December 19, 1984. — April 12, 1985.

Present: Smith, Kaplan, & Warner, JJ.

*Evidence*, Expert opinion, Consciousness of guilt. *Practice, Criminal*, Discovery, Indictment, Grand jury proceeding, Instructions to jury. *Gaming*.

At the trial of a defendant charged with setting up or promoting a lottery in violation of G. L. c. 271, § 7, the judge did not abuse his discretion in permitting a police officer to testify as an expert witness respecting the significance of a slip of paper taken from the defendant at the time of his arrest, despite the defendant's claims that the officer was not qualified as an expert and that his testimony was nothing more than the adopted hearsay opinion of another expert. [628-629]

Although the prosecution in a criminal case had agreed to provide the defendant with the names and addresses of proposed witnesses by October, 1983, but did not announce its intention to call an expert witness until the first day of trial, December 20, 1983, the judge did not err in permitting this witness to testify, where the defendant failed to show any prejudice resulting from the late disclosure of the witness. [629-631]

A police officer's testimony before a grand jury was sufficient to warrant an indictment charging the defendant with setting up or promoting a lottery in violation of G. L. c. 271, § 7, despite the defendant's claims that the officer's testimony was hearsay and that his explanation of numbers written on a slip of paper taken from the defendant was misleading. [631]

At the trial of a defendant charged with illegal gaming activities, an instruction to the jury on consciousness of guilt was warranted by evidence that the defendant, when approached by police just prior to his arrest, reached into his shirt pocket withdrawing and crushing a slip of paper, later identified at trial as a bookmaker's gambling memorandum, and that a police officer had to pry open the defendant's fingers to get the paper. [632]

Indictment found and returned in the Superior Court Department on July 14, 1983.

A motion to dismiss was heard by *George C. Keady, Jr.,* J., and the case was tried before *William W. Simons,* J.

*Terry Scott Nagel* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

WARNER, J. After a Superior Court jury trial, the defendant was convicted of setting up or promoting a lottery in violation of G. L. c. 271, § 7. On appeal, he alleges error in the admission of expert testimony, the denial of his motion to dismiss the indictment, and certain of the trial judge's instructions. We affirm.

1. Officer Montz of the Springfield police department, testifying as an expert, gave his opinion that a slip of paper seized from the defendant at the time of his arrest was "a slip synonymous with gaming activity." The defendant argues that Montz was not properly qualified as an expert and that his testimony was nothing more than the adopted hearsay opinion of another expert witness, one Meffen.

"The admission of expert testimony lies largely in the discretion of the trial judge." *Commonwealth* v. *Maltais,* 387 Mass. 79, 93 (1982). That decision will be disturbed on appeal only when no evidence has been received that would warrant the conclusion that the witness is competent to express an opinion upon a particular matter. *Commonwealth* v. *Bellino,* 320 Mass. 635, 638, cert. denied, 330 U.S. 832 (1947). *Commonwealth* v. *White,* 9 Mass. App. Ct. 904 (1980). There is no question of the admissibility of testimony of expert witnesses in gaming cases. *Commonwealth* v. *Boyle,* 346 Mass. 1, 4 (1963). Montz's qualifications were sufficiently established at the beginning of his testimony. See *Commonwealth* v. *Monahan,* 349 Mass. 139, 165 (1965). The fact that the judge permitted Montz to give his opinion implied a finding that he was qualified to do so. *Commonwealth* v. *Boyd,* 367 Mass. 169, 183 (1975). Montz's experience and training as a police officer in the field of gambling included on-the-job training, participation in over fifty gaming-related arrests and over fifty gaming-related investigations, and attendance at a week-long organized crime seminar concerning training in "numbers, horse racing, football

pool tickets, sports bets of all kinds [and] games"; he had qualified as an expert in "gambling-related" matters in previous cases. See *Commonwealth* v. *Boyle, supra* at 3.

Essential to Montz's opinion as to the character of the slip of paper was his analysis of the numbers appearing on it. When pressed on cross-examination as to the basis of his opinion, Montz conceded that he had needed help in interpreting the numbers and, to this end, had consulted other police officers, and Meffen, a retired police captain. We are not persuaded, however, by the defendant's argument that Montz's opinion was merely the adopted hearsay opinion of Meffen. When Meffen later testified as an expert witness at trial, he concurred with Montz's testimony, to the extent that he agreed the slip was a bookmaker's gambling memorandum, but disagreed as to what the numbers meant.[1] Thus, it appears that, although Montz may have initially consulted with Meffen, he ultimately brought his own independent analysis and judgment to bear. See *Commonwealth* v. *Gilbert*, 366 Mass. 18, 25 (1974). Montz was effectively cross-examined, and the weight to be given to his opinion was for the jury. See *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 385 (1980); *Simon* v. *Solomon*, 385 Mass. 91, 105 (1982); *Commonwealth* v. *Amaral*, 389 Mass. 184, 192 (1983). The jury were properly instructed on the role of experts and the status of their testimony. There was no abuse of discretion in the admission of Montz's testimony.

2. In a pretrial conference report, Mass.R.Crim.P. 11 (a)(2)(A), 378 Mass. 862, 863 (1979),[2] the Commonwealth agreed to provide the defendant with the names and addresses

---

[1] Montz testified that the first number appearing in each of the several rows of numbers represented the sums wagered by various bettors. Meffen disagreed, testifying that the first number indicated the identity of the bettor, not the amount wagered. Other discrepancies in the witnesses' interpretations of the numbers stemmed from this fundamental disagreement in their respective analyses.

[2] Mass.R.Crim.P. 11 (a) (2) (A) states, in pertinent part: "The conference report shall contain a statement of those matters upon which the parties have reached agreement . . . . Agreements reduced to writing in the conference report shall be binding on the parties and shall control the subsequent course of the proceeding."

of proposed witnesses by October, 1983. See Mass.R.Crim.P. 14(a)(2), 378 Mass. 874 (1979). On the first day of trial, December 20, 1983, the government belatedly announced its intention to call Meffen as an expert witness to testify to the nature of the slip of paper seized from the defendant, about which Montz had previously testified. Both the defendant's motion to prohibit Meffen from testifying and his subsequent motion to strike Meffen's testimony were denied.[3] The defendant argues on appeal that Meffen should not have been permitted to testify, as the late disclosure prejudiced his case.

Meffen was called by the Commonwealth to improve on the testimony of Montz. The scope of Meffen's testimony was identical to that of Montz's. Thus, the defendant cannot, and does not, allege surprise from any "unexpected testimony in the midst of trial."[4] See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 151 (1980), cert. denied, 451 U.S. 973 (1981). Neither does the defendant assert that the government intentionally concealed the identity of this witness until trial in hope of disadvantaging the defense. See *Commonwealth* v. *Delaney*, 11 Mass. App. Ct. 398, 403 (1981). The defendant has failed to show prejudice by the late disclosure of the witness.[5] See

---

[3] Agreements in written pretrial conference reports may be the equivalent of discovery orders and "thus subject to the trial judge's reasonably wide discretion to make such orders as he deems just or to impose sanctions in the event of noncompliance with discovery orders under Mass.R.Crim.P. 14(c)(1) and (2), 378 Mass. 880 (1979)." *Commonwealth* v. *Scalley*, 17 Mass. App. Ct. 224, 230 n.8 (1983). See *Commonwealth* v. *Delaney*, 11 Mass. App. Ct. 398, 403 n.3 (1981).

[4] The trial judge, in recognition of the late disclosure of Meffen, expanded the normal scope of voir dire to give the defendant "a little discovery."

[5] The record does not support the defendant's assertion that Meffen's testimony prejudicially informed the jury of past convictions and prosecutions. Neither is there merit to his argument that Meffen was shielded by the court from effective cross-examination. Meffen's ability to testify as to the paper's character was substantially based on his familiarity with the defendant's particular method of recording bets. The judge ruled that Meffen should not testify about his prior contact with the defendant, a ruling which was probably more than the defendant was entitled to, as such testimony would ostensibly be about the defendant's modus operandi. See *Common-*

*Commonwealth* v. *Cundriff, supra*; *Commonwealth* v. *Scalley*, 17 Mass. App. Ct. 224, 231 (1983). There was no error.

3. Montz, the Commonwealth's sole grand jury witness, testified as to the circumstances of the defendant's arrest and the character of the slip of paper seized from him. The defendant's pretrial motion to dismiss the indictment, on the ground that evidence had not been presented on every element of the crime, was denied. On appeal, the defendant asserts as new grounds for dismissal that Montz's testimony was hearsay and that his explanation of the paper distorted its contents. "We consider the issue only to determine whether there has been a showing of grave prejudice or of substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Francil*, 15 Mass. App. Ct. 35, 36-37 (1982). There has been no such showing. Montz's testimony was not hearsay, as he actively participated in the arrest and, as we have determined, offered his own opinion as to the meaning of the numbers appearing on the paper.[6] The defendant has failed to demonstrate that Montz's explanation of the numbers was false or misleading, impairing the integrity of the proceeding. See *Commonwealth* v. *Lincoln*, 368 Mass. 281, 284-285 (1975); *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 655 (1979); *Commonwealth* v. *Salman*, 387 Mass. 160, 166 (1982). Contrast *Commonwealth* v. *O'Dell*, 392 Mass. 445 (1984). There was sufficient evidence before the grand jury to establish the identity of the defendant and probable cause to arrest him. *Commonwealth* v. *O'Dell supra* at 450-451.

---

*wealth* v. *Davis*, 376 Mass. 777, 788 (1978); *Commonwealth* v. *Easterling*, 12 Mass. App. Ct. 226, 229 (1981). The defendant argues that the ruling restricted his right to probe the basis of Meffen's opinion. Our review of the transcript shows that, while the judge cautioned the defendant's counsel that certain cross-examination of Meffen might result in testimony prejudicial to the defendant, the judge expresly stated that he was not limiting the defendant's cross-examination.

[6] In any event, an indictment will not be dismissed merely because the evidence presented to the grand jury consisted of hearsay in whole or in part, although the better practice is to present competent evidence. *Commonwealth* v. *McCarthy*, 385 Mass. 160, 162 n.4 (1982). *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450 (1984). *Commonwealth* v. *Saya*, 14 Mass. App. Ct. 509, 514 (1982). See Mass.R.Crim.P. 4(c), 378 Mass. 849 (1979).

4. When approached by the police just prior to his arrest, the defendant reached into his shirt breast pocket withdrawing and crushing a slip of paper. Officer Mitchell, the first to reach the defendant, had to pry open the defendant's fingers to get the paper, later identified at trial as a bookmaker's gambling memorandum. There was sufficient evidence to warrant an instruction on consciousness of guilt. Contrast *Commonwealth* v. *Haraldstad*, 16 Mass. App. Ct. 565, 570 (1983); *Commonwealth* v. *Kane, ante* 129, 136-137 & n.6 (1984).

The judge charged the jury on consciousness of guilt in accordance with the criteria suggested by the Supreme Judicial Court in *Commonwealth* v. *Toney*, 385 Mass. 575, 582-585 (1982). See *Commonwealth* v. *Kane, supra* at 137-138. The defendant, however, alleges reversible error in the judge's reference to the defendant's conduct with respect to the slip of paper as illustrative of the legal principle of consciousness of guilt. Viewing the instructions as a whole, see *Commonwealth* v. *Perry*, 383 Mass. 639, 647 (1982); *Commonwealth* v. *Meuse*, 10 Mass. App. Ct. 937 (1980); *Commonwealth* v. *Simmons,*, 11 Mass. App. Ct. 156, 163 (1981), we find no error. Immediately following the reference to the slip of paper, the judge told the jury: "It is for you to say what the evidence is and what the evidence that you wish to accept is." The judge further instructed the jury that, before they drew an inference of consciousness of guilt, they "should be satisfied beyond a reasonable doubt that the acts enacted disclose consciousness of guilt and not something else." See *Commonwealth* v. *Patch*, 11 Mass. App. Ct. 981 (1981).

5. There is no merit to the defendant's other allegations of error in the jury instructions. It was not necessary for the judge to call to the jury's attention possible alternative explanations for the defendant's conduct concerning the slip, for example, consciousness of guilt of some crime other than the one for which the defendant was indicted. See *Commonwealth* v. *Toney, supra* at 585. Neither was there reversible error in the judge's reference to the defendant's "present claim of innocence," which the defendant argues implied that he had an obligation to assert a claim rather that have the benefit of a

presumption of innocence. The jury were forcefully instructed on the presumption of innocence, that the burden of proof never shifts from the Commonwealth to the defendant, and that the defendant was under no obligation to produce any evidence as to his innocence. Moreover, none of these claims of error is properly before us, as they were not specified as grounds for objection to the instructions at trial. See Mass.R. Crim.P. 24(b), 378 Mass. 895 (1979). There is no risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

*Judgment affirmed.*