VERNON THADDEUS TALIAFERRO *v.* STATE
OF MARYLAND

[No. 101, September Term, 1981.]

*Decided February 10, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

*Michael R. Braudes, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court. ELDRIDGE, COLE and DAVIDSON, JJ., dissent. ELDRIDGE, J., filed a dissenting opinion at page 398 *infra,* in which COLE and DAVIDSON, JJ., concur.

Petitioner, Vernon Thaddeus Taliaferro (Taliaferro), was convicted on May 22, 1980, in a jury trial before the Circuit Court for Prince George's County, of robbery with a deadly weapon and use of a handgun in the commission of a felony.

On the last trial day petitioner sought to introduce the testimony of an alibi witness whose identity was disclosed to the State for the first time on that date. Acting under Md. Rule 741,[1] the trial court excluded the proffered alibi evidence. There was no other proof from the defense. The conviction was affirmed by the Court of Special Appeals in an unreported opinion. We granted certiorari to consider whether "the trial court's ruling that Petitioner's sole witness would not be permitted to testify constitute[d] an abuse of discretion and/or a denial of due process." We shall hold that, on the facts of this case, there was no abuse of discretion or denial of due process.

---

1. The rule, dealing with criminal causes, in relevant part provides:

Rule 741. Discovery and Inspection.
. . . .
d. *Discovery by the State.*
Upon the request of the State, the defendant shall:
. . . .
   3. Alibi Witnesses.
Upon designation by the State of the time, place and date of the alleged occurrence, furnish the name and address of each witness other than the defendant whom the defendant intends to call as a witness to show he was not present at the time, place and date designated by the State in its request.
. . . .
f. *Continuing Duty to Disclose.*
If, subsequent to compliance with a request made under this Rule or with any order compelling discovery, a party discovers additional matter previously requested and required to be furnished, he shall promptly furnish the matter to the other party or his counsel. If the additional matter is discovered during trial, in addition to furnishing the matter promptly to the other party or his counsel, he shall notify the court that the matter is being furnished to the other party.
g. *Protective Orders.*
Upon motion and for good cause shown, the court may order that specified disclosures be restricted. If at any time during the proceedings it is brought to the attention of the court that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court may order that party to permit the discovery of the matters not previously disclosed, strike the testimony to which the undisclosed matter relates, grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances. All material and information to which a party is entitled must be disclosed in time to permit beneficial use thereof.

The victim was John Leo Parker (Parker), an adult, who resided at his mother's home at 6801 Walkermill Road, in District Heights. On September 1, 1979, at approximately 9:05 P.M., Parker was at home, alone. He answered a knock at the door. It was a man, who was unknown to Parker, inquiring about someone named "Billy". The light inside the house was on, as well as were two lights outside on the porch. Parker and the man conversed face to face, at a distance of two feet, for an estimated five minutes. Then a second man came up behind the first and pointed a cocked handgun at Parker over the shoulder of the first man. Parker was spun around and led through the house to his mother's room which the men ransacked. Jewelry, later valued at a minimum of $5,000, was taken. Parker was left tied up. That evening the police showed Parker a photographic array which did not include Taliaferro's picture. Parker selected one photograph as a "look-alike." On November 1, 1979, the police showed Parker another photographic array. It contained a picture of Taliaferro whom Parker identified as the robber with whom he had conversed. At trial, Parker also made an identification of Taliaferro in person.

Petitioner was arrested on November 28, 1979 and released on cash bail the next day. He remained on bail continuously until his sentencing. An indictment of Taliaferro and a second man [2] was returned December 19, 1979. Counsel entered her appearance for Taliaferro on January 8, 1980. On February 1, 1980 the State filed a motion for discovery requesting, *inter alia,* the "name and address of each witness other than the defendant whom the defendant intends to call as a witness to show he was not present at" 6801 Walkermill Road, District Heights, Maryland on September 1, 1979, at approximately 21:05 hours.[3] Under Md. Rule 741 e 1 disclosure of any alibi witnesses was due to be furnished by February 11. No written response was ever made.

---

2. An Elijah Howard Pringle was jointly indicted with Taliaferro, but was tried separately.

3. No point was made in the trial court, or on appeal, based on lack of timeliness of the State's motion.

On February 14, 1980 a notice was sent to petitioner's counsel, with a copy to Taliaferro at his address in Baltimore City, setting trial for April 11, 1980 and setting a pretrial conference for March 27, 1980. By a notice dated March 3, 1980, with copy to petitioner personally, trial was reset from April 11 to May 21, 1980. A March 28, 1980 notice, with copy to petitioner personally, reset the pretrial conference from March 27 to May 6, 1980.

Taliaferro was present with his attorney at the pretrial conference. The court was advised that there would be one defense witness.[4] Counsel for both parties signed a pretrial memorandum at that conference which reads in part:

> Counsel further certify that ... the names of all witnesses now known have been exchanged by the parties and that this case is ready for trial.
>
> Counsel certify that all witnesses are available for the trial date ....

On the morning trial was scheduled to begin, May 21, Taliaferro's counsel requested a continuance. She advised the court that Taliaferro had given her the name and telephone number of a "Karen Bellamy" at the first interview, that counsel had never been able to reach the witness by telephone, but that Taliaferro had that day given counsel the witness' address. The requested continuance was denied. Trial of Taliaferro's case began at 2:55 P.M. on May 21, with the selection of the jury. A motion to suppress the photographic identification was heard and denied. Trial on the merits proceeded with the testimony of Parker and of the investigating police officer. On cross-examination, Parker admitted that, at the time of the crime, he was on probation for storehouse breaking. Court adjourned at 5:20 P.M.

Trial resumed at 9:30 A.M. on Thursday, May 22 with brief testimony from Parker's mother as to the value of the

---

4. Statements made to the court at trial by petitioner and his counsel indicate that the anticipated defense witness may have been identified at that time as Caroline Bellamy (also referred to as Karen Bellamy). There is no contention, however, that the State knew earlier than at trial that the defense was alibi.

property taken. The State rested. Petitioner's counsel advised the court that Taliaferro had "been in touch with the witness that I was telling you about" and that Taliaferro was "trying to get someone here" from Baltimore. A delay of 1½ hours was requested so that Taliaferro could "try to get him here." [5] At 10:10 A.M. the court recessed until 11:30 A.M. after denying the defense motion for a judgment of acquittal. The jury was brought back into the courtroom at 12:05 P.M. and excused for lunch with instructions to report back at 1:30 P.M.

Colloquy and testimony in the afternoon of May 22 reveal that Taliaferro had spoken by telephone that morning with an Edward Rich, Jr. (Rich) in Baltimore. Taliaferro is also a resident of Baltimore. Taliaferro's father had gone to Baltimore and brought Rich to the court house in Upper Marlboro. At 1:25 P.M., in the court house corridor, Rich had been introduced to the prosecutor as an alibi witness. Court reconvened at 1:30 P.M. with the jury in the box. The prosecutor, at sidebar, objected to Rich testifying because "a couple of minutes before court I started to talk to the gentleman — I do not believe that gives me fair opportunity to pursue this gentleman's background to investigate the evidence that he proposes to give, and if necessary, to get any rebuttal witnesses to his testimony." The court was asked to preclude the witness from testifying.

Defense counsel stated that she had not known what Rich was to testify to until Rich came to the court house. She had asked Taliaferro previously for witnesses and he had given the name of the friend, Caroline Bellamy, whom counsel had been unable to get to court because of lack of an address.

The court, after stating that the only alternative to excluding the testimony was a continuance, asked the prosecutor what he would have done had Rich's name been disclosed as an alibi witness the preceding week. This colloquy ensued:

---

5. The transition to the personal pronoun, "him," on the morning of the 22nd is the first indication in the record that the prospective witness was not Caroline Bellamy.

[PROSECUTOR]: For one thing, I would have had the police department run a record check on [Rich], try to determine where he lives, what connection he has had with this defendant, or the co-defendant in the past, all sorts of things I can't do on the spur of the moment. I may not come up with anything.

THE COURT: How long do you need to do that?

[PROSECUTOR]: Monday. That would give me adequate time.

THE COURT: We may have to do that.

[PROSECUTOR]: Let me just check my schedule. Monday is Memorial Day.[6]

THE COURT: I wonder how many of these jurors are due back to work [as jurors] next week. We are going to lose some of them if they have a holiday Monday and they are not due back. I might inquire how many of them would have more time to serve, and then make a decision.

Ladies and gentlemen of the jury, how many of you are winding up your jury service this week?

That ends that. Six people put their hands up.[7]

[DEFENSE COUNSEL]: Is your investigation going to concern itself just with checking with the police?

[PROSECUTOR]: I am not sure exactly, depending on what we may determine, it may require me to consider rebuttal witnesses. I am just not certain, but I had no reason to believe there

---

**6.** Monday, May 26, 1980 was the last Monday in May and was the day celebrated as Memorial Day by the federal government. *See* 5 U.S.C. § 6103 (a) (1976). The State of Maryland celebrates Memorial Day on May 30 which was the Friday of the following week in 1980. *See* Md. Code (1957, 1981 Repl. Vol.), Art. 1, § 27 (a) (7). Maryland courts observe the holiday designated by State law. Md. Rule 1205 a.

**7.** Prince George's County, Maryland adjoins the District of Columbia. Many of the county's residents are employed by the federal government. It appears that the trial judge was attempting to determine how many jurors were told their term of service would expire on Friday, May 23, and might have made plans for the three day federal holiday weekend.

were going to be any alibi witnesses in this case, and I would just like to sit down and think about it.

The defense proffered that Rich would testify that he had injured his back and head on August 22, 1979, had been confined to his house for approximately three months, and that during at least the first three or four weeks of the confinement, Taliaferro had been at his house each evening, including September 1, the evening of the crime. Defense counsel suggested "a couple of simple telephone calls would provide the investigation" sought by the State, and that it could be done that day. The State replied that "there is a little more involved than a mere record check." He said there might be other factors which he would like to check out in addition to Rich's record and his disability. In the course of his argument the State's Attorney stated that "[i]f the court wants to continue [the case], it is fine with me . . ." and also that he was "willing to go along with" putting the case off for a few more days.

Following a recess, the trial judge, after outlining most of the procedural history of the case, ruled that he was exercising his discretion to refuse to permit the alibi testimony, for failure to comply with Rule 741 d 3.

Taliaferro elected not to testify. After a conference with counsel in Chambers the court resumed the bench and advised defense counsel that it would give her

> the opportunity if you like, to put in the record the efforts that the defendant has made over a period of whatever time to locate and produce this alibi witness because I don't know that there is anything in here to indicate what, if anything, he has done, and depending on that, it is a matter of diligence as far as I am concerned, and if diligence has been rewarded, as of today, that may be one thing. If there is no diligence, that may be another thing. If there has been some diligence but not much, that would be another thing.

Taliaferro was sworn and testified. In substance he said that he had contacted Rich around December 1979. Rich was willing to come to court. At that time Rich was living at his mother's house, but had subsequently left, and Taliaferro did not know where Rich was living. Taliaferro had gotten in touch with Rich "yesterday, the day before yesterday" by telephoning Rich's mother's house and Rich was there. Rich's mother had lived at the same address and had had the same telephone number since September of 1979. Taliaferro could not say when he had last called Rich's mother's home prior to May 21, 1980. When Taliaferro had called Rich's mother's home on prior occasions, he would leave a message for Rich but had never received any return calls.

Defense counsel then presented an argument based on the factors set forth in *United States v. Myers,* 550 F.2d 1036 (5th Cir. 1977), *cert. denied,* 439 U.S. 847, 99 S. Ct. 147, 58 L. Ed. 2d 149 (1978) as ones to be considered in deciding whether to exclude. In that case, dealing with a prosecution rebuttal witness, the court listed the amount of prejudice resulting from the failure to disclose, the reason for non-disclosure, the extent to which the harm caused by non-disclosure has been mitigated by subsequent events, the weight of the properly admitted evidence supporting the defendant's guilt, and other relevant factors arising out of the circumstances of the particular case. As to the reason for Taliaferro's non-disclosure, defense counsel argued that

> Mr. Taliaferro has testified the reason he talked to [Rich] in December about it, and then [Taliaferro] was of the opinion that Caroline Bellamy was going to testify, he didn't have an address for Caroline Bellamy. After he spoke with Mr. Rich, Mr. Rich then moved, and he made efforts to find out where it was he lived. He didn't know until today where Mr. Rich lived. We couldn't have provided that if we had to.

In deciding to let its ruling stand, the court explained in part as follows:

It appears to me, that if I could have found that the defendant was diligent in his efforts *in providing this name and address,* and that his diligence just paid off yesterday, that I could then rule that he has done all that the rule requires. However I can't make that finding. From what I have heard from the way this defendant has testified, he has known the address of the mother of the witness. The mother of the witness still resides at the same address she resided at back in November. It is also obviously very important to this defendant to have this alibi witness here, probably one of the most important decisions of his life . . . . He waits until two days before the trial to actually locate this witness, when he could have done so early on. He hasn't made any real effort, except yesterday to locate this witness, and then springs it so to speak on the state the second day of trial . . . . [Emphasis supplied.]

The reasons underlying a procedure that requires notice of an alibi defense are well stated in Epstein, *Advance Notice of Alibi,* 55 J. Crim. L., Criminology & Police Sci. 29, 31-32 (1964):

*One.* — Foremost is the idea that the statute prevents surprise. Alibi has been termed a "hip pocket" defense because of the ease with which it can be manufactured for introduction in the final hours of trial.

*Two.* — The statute acts to deter false alibis because defendants know that the information furnished will be investigated before trial . . . .

. . . .

*Three.* — Pretrial investigation results in a saving of money and trial time. This occurs in two ways. (1) If, after the investigation, the district attorney is satisfied that the alibi is true, the case should be dismissed; (2) the district attorney is not

surprised at trial by the alibi defense, and there is no need for a continuance to investigate and prepare . . . .

. . . .

*Four.* — Alibis which are presented at trial will be accorded more respect . . . . [Footnotes omitted.[8]]

In *Williams v. Florida,* 399 U.S. 78, 81-82, 90 S. Ct. 1893, 1896, 26 L. Ed. 2d 446, 450 (1970), the Court rejected a due process challenge to Florida's notice of alibi rule:

We need not linger over the suggestion that the discovery permitted the State against petitioner in this case deprived him of "due process" or a "fair trial." Florida law provides for liberal discovery by the defendant against the State, and the notice-of-alibi rule is itself carefully hedged with reciprocal duties requiring state disclosure to the defendant. Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate. Reflecting this interest, notice-of-alibi provisions, dating at least from 1927, are now in existence in a substantial number of States. The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence. [Footnotes omitted.]

The Federal Rules of Criminal Procedure have since 1975 included a notice of alibi requirement in Rule 12.1. Upon

---

8. Epstein advances as a fifth reason that the rule "is important in the context of more liberal discovery in criminal cases."

failure of either party to comply with the requirements of that rule, "the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense." Fed. R. Crim. P. 12.1 (d). United States Courts of Appeals view the imposition of the sanction of exclusion as involving an exercise of discretion and the standard for appellate review is whether there has been an abuse of discretion.[9]

A requirement for notice of an alibi defense, with identification of proposed alibi and rebuttal to alibi witnesses, now exists under statute or rule of court in 35 of our sister states and in the District of Columbia. There is an express provision for exclusion of alibi witness testimony as a sanction for violation in all but three of these jurisdictions.[10] Twenty-three jurisdictions provide that for violation of the alibi disclosure requirements the court "may" exclude the testimony.[11] In eight states, the sanction provision states that the court shall exclude the alibi or alibi rebuttal testimony, unless the party offering it shows good cause to the contrary.[12] In Michigan, the statute in terms mandates the exclusion of evidence offered in violation of the disclosure

---

9. United States v. Woodard, 671 F.2d 1097, 1100 (8th Cir. 1982); United States v. White, 583 F.2d 899, 902 (6th Cir. 1978); United States v. Fitts, 576 F.2d 837, 839 (10th Cir. 1978); United States v. Barron, 575 F.2d 752, 757 (9th Cir. 1978); United States v. Myers, *supra,* 550 F.2d 1036, 1043; United States v. Smith, 524 F.2d 1288, 1290 (D.C. Cir. 1975).

10. Me. R. Crim. P., Rule 16A (b) ("the court may take appropriate action."); Minn. R. Crim. P. 9.02, 9.03 ("the court may upon motion and notice . . . enter such order as it deems just in the circumstances."); Wash. Super. Ct. Crim. R. 4.7 ("the court may . . . enter such other order as it deems just under the circumstances.").

11. Ariz. R. Crim. P. 15.2, 15.7; Ark. R. Crim. P. 18.3, 19.7 ("the court may . . . prohibit the party from introducing in evidence the material not disclosed . . . ."); D.C.R. Crim. P. 12.1; Fla. R. Crim. P. 3.200; Haw. R. Penal P. 12.1; Idaho Code § 19-519 (1979); Ill. Sup. Ct. R. 413 (d), 415 (g); La. Code Crim. Proc. Ann. art. 727 (West 1981); Mass. R. Crim. P. 14 (b); Miss. Unif. Cir. Ct. Crim. R. 4.07; Mo. Sup. Ct. R. 25.05, 25.16; Nev. Rev. Stat. § 174.087 (1981); N.H. Super. Ct. R. 100; N.J.R. Crim. Prac. 3:11; N.M.R. Crim. P. 32; N.Y. Crim. Proc. Law § 250.20 (McKinney 1971, 1981 Cum. Supp.); N.D.R. Crim. P. 12.1; Ohio Rev. Code Ann. § 2945.58 (Page 1982); Pa. R. Crim. P. 305 C; R.I.R. Crim. P. 16 (c); Tenn. R. Crim. P. 12.1; Utah Code Ann. § 77-14-2 (1982); W. Va. R. Crim. P. 12.1.

12. Colo. Rev. Stat. § 16-7-102 (1978); Ind. Code Ann. § 35-36-4-1 *et seq.* (Burns 1979, 1982 Cum. Supp.); Iowa Code Ann. § 813.2, Rule 10 (10) (West

requirements, without any express good cause exception.[13] In Kansas, the statute permits adding to a list of alibi witnesses initially properly filed, but otherwise appears to mandate exclusion for failure to give notice.[14]

In most states, as in the federal system, the sanction to be applied rests in the discretion of the trial court where there has been a violation of a rule requiring the timely disclosure of alibi or rebuttal witnesses in a criminal case. Application of the sanction is reviewable on appeal to determine if discretion has been abused. The exclusion of testimony from defense alibi witnesses has been sustained in many cases. Among the more recent decisions reaching that result are: *Clark v. United States,* 396 A.2d 997 (D.C. 1979); *Lewis v. State,* 411 So. 2d 880 (Fla. App. 1981); *State v. Davis,* 63 Haw. 191, 624 P.2d 376 (1981); *James v. State,* 411 N.E.2d 618 (Ind. 1980); *People v. Robinson,* 104 Ill. App. 3d 20, 432 N.E.2d 340 (1982); *People v. Braxton,* 81 Ill. App. 3d 808, 401 N.E.2d 1062 (1980); *State v. Christensen,* 323 N.W.2d 219 (Iowa 1982); *State v. Brown,* 414 So. 2d 689, 698-99 (La. 1982); *Commonwealth v. La Frennie,* 13 Mass. App. 977, 432 N.E.2d 535 (1982); *State v. Lindsey,* 284 N.W.2d 368, 373-74 (Minn. 1979); *Eckert v. State,* 96 Nev. 96, 605 P.2d 617 (1980); *State v. Flohr,* 301 N.W.2d 367 (N.D. 1980); *State v. Mai,* 54 Or. App. 334, 634 P.2d 1367 (1981) (in banc), *petition for review allowed,* 292 Or. 334, 644 P.2d 1126 (1981).

In the context of a notice of alibi rule, the Supreme Court has not yet passed upon the constitutionality of exclusion as the sanction for violation by an accused. *See Wardius v. Oregon,* 412 U.S. 470, 472 n.4, 93 S. Ct. 2208, 2211 n.4, 37 L. Ed. 2d 82, 86 n.4 (1973) and *Williams v. Florida, supra,* 399 U.S. at 83 n.14, 90 S. Ct. at 1897 n.14, 26 L. Ed. 2d at 451 n.14. However, state courts and lower federal courts

---

1979, 1982 Cum. Supp.); Mont. Code Ann. § 46-15-301 (1981); Or. Rev. Stat. § 135.455 (1981); S.D. Comp. Laws Ann. § 23A-9-1 *et seq.* (1979); Vt. R. Crim. P. 12.1; Wis. Stat. Ann. § 971.23 (8) (West 1971, 1982 Cum. Supp.).

13. Mich. Comp. Laws Ann. §§ 768.20, 768.21 (West 1982). People v. Merritt, 396 Mich. 67, 82, 238 N.W.2d 31, 37-38 (1976) which Taliaferro emphasizes and which held that preclusion should be limited only to an "egregious" case, was decided under a prior statute.

14. Kan. Stat. Ann. § 22-3218 (1981).

have decided that the exclusion of alibi testimony offered by an accused who has violated an alibi discovery requirement does not offend the Sixth Amendment right to have compulsory process for the obtaining of witnesses. "The reasoning is that the alibi rule does not prevent a defendant from compelling the attendance of witnesses; rather, the rule provides reasonable conditions for the presentation of alibi evidence." *State v. Smith,* 88 N.M. 541, 543, 543 P.2d 834, 836 (N.M. Ct. App. 1975).[15] *See also Rider v. Crouse,* 357 F.2d 317 (10th Cir. 1966); *United States ex rel. Snyder v. Mack,* 372 F. Supp. 1077 (E.D. Pa. 1974); *State v. Dodd,* 101 Ariz. 234, 237, 418 P.2d 571, 574 (1966); *State v. Roberts,* 226 Kan. 740, 602 P.2d 1355 (1979); *People v. Jackson,* 71 Mich. App. 395, 249 N.W.2d 132 (1976); [16] *State v. Flohr, supra,* 301 N.W.2d 367; *Commonwealth v. Vecchiolli,* 208 Pa. Super. 483, 224 A.2d 96 (1966); *State ex rel. Simos v. Burke,* 41 Wis. 2d 129, 163 N.W.2d 177 (1968).[17]

---

**15.** In *Smith* the defendant timely gave a general notice of intent to rely on alibi as a defense, but did not give the names and addresses of alibi witnesses or specify the place at which the defendant claimed to have been at the time of the alleged offense, as required by the applicable rule.

**16.** *Jackson* sustained application of the Michigan mandatory exclusion sanction where the defendant gave notice seven days before trial, but it was three days late.

**17.** There are cases arising under the federal habeas corpus statute in which exclusion of defense alibi witnesses has been held to constitute a denial of due process on the particular facts presented. Hackett v. Mulcahy, 493 F. Supp. 1329 (D.N.J. 1980) involved a notice of alibi defense given by prior counsel for the accused which was due on June 3. A general notice had been given June 18 and the identity of witnesses was furnished July 7. Trial did not commence until November 1. After the defendant's new counsel made an opening statement which indicated that the defense was alibi and that alibi witnesses would be called, the prosecutor told the court he was "not too concerned with alibi witnesses," and that he had not talked with them. The first defense witness was the prior attorney. He was cross-examined concerning the untimely notice. When the defense attempted to have the alibi witnesses testify, they were excluded and the jury was told the alibi defense would not be allowed because defense counsel had not complied with court rules. The United States District Court concluded:

In view of the highly technical nature of his counsel's error, the absence of any evidence of complicity by petitioner in that error, the lack of any prejudice to the State caused by the error, the severe prejudice to petitioner caused by the preclusion sanction, and the use of that sanction by the prosecution before the jury, we find that this defendant was deprived of fundamental rights and of due process of law. [*Id.* at 1340.]

Subsection g of Md. Rule 741 permits the trial court to fashion an appropriate order when a party has failed to comply with that Rule. A court "may," *inter alia,* "grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed ... or enter any other order appropriate under the circumstances." The Maryland rule, while expressly recognizing exclusion as a possible sanction, does not mandate its imposition. Nor does it specify exclusion as the sanction for violation, in the absence of good cause for not imposing it. Rule 741 g leaves the sanction, if any, to the discretion of the trial court. The imposition of an exclusionary sanction against the State or the accused under Rule 741 is circumscribed only by the principle of abuse of discretion and by constitutional limitations, under all of the relevant circumstances.

The exercise of discretion contemplates that the trial court will ordinarily analyze the facts and not act, particularly to exclude, simply on the basis of a violation disclosed by the file. *See Bradford v. State,* 278 So. 2d 624 (Fla. 1973) (trial court erred by excluding defense witnesses based solely on the absence of their names from witness list furnished state) and *State v. Bias,* 393 So. 2d 677 (La. 1981) (trial court erred by treating statute that made exclusion discretionary as if exclusion were mandatory). In the instant case, the trial court recognized that it had, and was applying, discretion. It heard extensive arguments from both counsel and a proffer of proof before initially ruling to exclude, then took evidence from the accused, and again heard argument from defense counsel before deciding not to disturb its initial ruling.

Under the approach taken by most courts, whether the exclusion of alibi witness testimony is an abuse of discretion turns on the facts of the particular case. Principal among the relevant factors which recur in the opinions are whether the

---

Brown v. Wainwright, 459 F. Supp. 244 (M.D. Fla. 1978) found a due process violation in a Florida prosecution. That state has broad discovery in criminal cases. Both the state and the defense had failed to comply with the rules, but only the defense witnesses were precluded from testifying while the state was permitted to introduce previously undisclosed documents which should have been furnished in discovery.

disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering and opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance. Frequently these factors overlap. They do not lend themselves to a compartmental analysis.

In the case at hand the rule violation was a gross one. There was no attempt at compliance. This is not a case where notice was given a few days late, but well in advance of trial, or given in a technically defective form. Illustrative of what was held to be a technical non-compliance is *State v. Silva,* 118 R.I. 408, 374 A.2d 106 (1977). Six months prior to trial, but 10 days late under the court rule, the defendant filed a notice of alibi defense, stating that he spent the entire evening in question at two specified addresses and identifying three alibi witnesses. Five weeks prior to trial the disclosure was supplemented by an additional witness' name, without an address. The trial court excluded the alibi testimony for lack of compliance with the rule's specificity requirements. It was held there was substantial compliance with the letter and spirit of the rule and that "the trial court abused its discretion in excluding the defendant's alibi testimony." *Id.* at 412, 374 A.2d at 109.

Nor did Taliaferro present any excuse justifying the violation. His counsel had asked about Taliaferro's witnesses at the first interview and had been given the name and telephone number of Caroline Bellamy. While the record does not explicitly show whether Ms. Bellamy was to be an alibi witness or not, she was not presented as a witness and there is no contention of error in the denial of a postponement to obtain her presence in court. It was Rich who was excluded. Under Taliaferro's proffer, he was with Rich, at Rich's mother's home in Baltimore, every night for a period of weeks surrounding and including the night of the robbery. Taliaferro knew Rich's name and at least his last known address at his mother's home. Indeed, in the preceding December Taliaferro and Rich had discussed Rich being a

witness. But Taliaferro did not give Rich's name to defense counsel as an alibi witness until the second day of trial. The only justification which Taliaferro attempted to present was that he had not been able to locate Rich. That explanation did not persuade the trial court to ignore the violation. It could not find that Taliaferro "was diligent in his efforts in providing this name and address . . . ."

In this respect, the instant matter duplicates *United States v. White, supra,* 583 F.2d 899. There the accused was aware of the identity of his alibi witness, Walker, for months prior to trial but did not reveal Walker until the close of all of the evidence. The reason given was that the accused had been unable to locate Walker. The Sixth Circuit affirmed barring the alibi witness, and said that

> the mere fact that appellant did not know Walker's whereabouts does not excuse appellant from complying with the identity requirements of Rule 12.1 (a). If appellant had tendered notice of Walker's identity, the Government would have had an opportunity to locate Walker for the benefit of both parties. [583 F.2d at 902.]

Similarly, where the defendant was charged with committing a crime on August 17 and contended that each night during the period August 13 to August 21 he had spent his time in taverns and then later " 'at the premises occupied by Alice Peasecke,' " but did not give notice of alibi until 5:00 o'clock on the afternoon of the day preceding trial, the alibi evidence was excluded. It was held there was no good cause shown for the failure to disclose because the "defendant was aware of this alibi at all times and could have served his notice of alibi in compliance with the statute." *Jensen v. State,* 36 Wis. 2d 598, 153 N.W.2d 566, 568, *modified,* 36 Wis. 2d 598, 154 N.W.2d 769 (1967). In *United States v. Barron, supra,* 575 F.2d 752, the defendant did not disclose his alibi defense and alibi witnesses to his public defender counsel until after the jury had been empanelled. Counsel immediately advised the government. Based on the accused's steadfast refusal to cooperate in his own defense,

coupled with the strength of the government's case, it was held that there had been no abuse of discretion in excluding the alibi witnesses, even though, as a result of the timing of the government's discovery request, the defendant's answer was only one day late. Alibi witnesses who were known to the defendant were also involved in *United States v. Smith, supra,* 524 F.2d 1288. At a pretrial conference defense counsel told the court that the defendant proposed to present an alibi defense, but counsel was unable to furnish the names of witnesses because the defendant had failed to provide counsel with their names. The trial court ruled the witnesses would not be allowed to testify. At trial, the defendant presented members of his wife's family as alibi witnesses, but the court adhered to its previous ruling. The District of Columbia Circuit found no abuse of discretion because no explanation had been given for the defendant's delay in furnishing the names of the witnesses. *People v. Braxton, supra,* 81 Ill. App. 3d 808, 401 N.E.2d 1062, involved an attempt on the first day of trial to amend discovery answers to present an alibi defense, which was denied. An alibi witness, defendant's wife of two days, was precluded from testifying. In affirming, the appellate court said:

> [N]o evidence was produced showing that the defendant was unaware of his alibi defense and the existence of the alibi witness prior to [the day of trial]. Therefore, the trial judge did not abuse his discretion in denying the motion to amend the answer to discovery. [81 Ill. App. 3d at 815, 401 N.E.2d at 1067.]

Cases like the foregoing may be contrasted with *Williams v. State,* 97 Nev. 1, 620 P.2d 1263 (1981). There the accused had furnished counsel with the names of four alibi witnesses, and counsel had timely dictated the notice, but through inadvertence, had failed to file it until seven days prior to the scheduled trial date. The applicable rule required filing ten days prior to trial. However, because of a postponement, trial did not actually begin until ten days after the filing of the notice. Further, the State's case rested exclusively on the

testimony of the victim. Under these circumstances it was held that good cause had been shown for relief from strict compliance with the statute.

With respect to the factor of prejudice, it is clear that Rich was the only non-party witness whom Taliaferro had present in court to testify. Further, as the trial judge recognized, Rich's testimony was important to the defendant. The prosecution's case rested on an identification only by the victim. However, had the trial court permitted Rich to testify on the afternoon when he was produced in court, the State would have been severely prejudiced. It would have had no opportunity to investigate Rich's background or to investigate the alibi, disclosed at the last minute, which undertook to place Taliaferro with Rich at Rich's mother's home. Taliaferro does not contend that this should have been done. His point is that the court abused its discretion by failing to grant a continuance to enable the State to investigate, particularly since Taliaferro contends that the State conceded that a 1½ day postponement would cure any prejudice. This argument ties reducing prejudice to a continuance and essentially raises the same considerations as an argument that the denial of a continuance to obtain a witness is an abuse of discretion. In that context we have said that the defendant must show, *inter alia,* " 'that he [has] made diligent and proper efforts to secure the evidence.' " *Jackson v. State,* 288 Md. 191, 194, 416 A.2d 278, 281 (1980), quoting an earlier *Jackson v. State,* 214 Md. 454, 459, 135 A.2d 638, 640 (1957), *cert. denied,* 356 U.S. 940, 78 S. Ct. 784, 2 L. Ed. 2d 816 (1958). Here, the trial court, based on Taliaferro's own testimony, found a lack of diligence both in providing the name and address of Rich, and with respect to Taliaferro's explanation, in determining Rich's whereabouts.

Taliaferro's argument of a concession that a 1½ day continuance would cure any prejudice to the State overstates the prosecutor's position as reflected by the record. The prosecutor's statement that a delay from Thursday afternoon until Monday morning would give him "adequate time" was a reference to the time within which Rich's background and

connection with the defendant could be checked. The State's Attorney also asserted that he might wish to bring in rebuttal witnesses. Obviously the prosecutor was not in a position, when Rich was sprung on him at the eleventh hour, to advise the court where an as yet unperformed investigation would lead. While a continuance would relieve the State of the severe prejudice of being required to cross-examine a surprise alibi witness immediately, the short continuance for which petitioner contends could never equate with the opportunity to prepare in the period from February 11 to May 21 to meet a disclosed alibi defense witness. That is what the State was entitled to under Rule 741 in this case. We cannot know what an investigation of Rich and of the alibi would have revealed, and it is speculation to treat the continuance alternative as involving a fixed period of 1½ to 2½ trial days. If the State, after initial investigation, had requested a further continuance for the purpose of obtaining witnesses to rebut the alibi and to impeach Rich, the matter could have been further exacerbated. We also note that there was no express waiver by Taliaferro of any claim of right to notice from the State of alibi rebuttal witnesses.

Further complicating the problem was that this was a jury trial. The trial court was also entitled to consider that the estimated term of service for half of its jury ended on Friday, May 23, so that a minimum continuance would be until Tuesday, May 27, unless plans which those jurors likely had made for the three day federal holiday were to be ignored.

It has been said that the exclusion sanction should be one of last resort, to be "invoked only in those cases where other less stringent sanctions are not applicable to effect the ends of justice." *State v. Smith,* 123 Ariz. 243, 252, 599 P.2d 199, 208 (1979). This approach, if applied to a case like the one at bar, seriously undermines one of the major purposes of an alibi reciprocal discovery rule — avoiding trial interruption and delay. The Advisory Committee on the Federal Rules of Criminal Procedure, in recommending Fed. R. Crim. P. 12.1 stated (62 F.R.D. 271, 294-95):

> Prohibiting from testifying a witness whose name was not disclosed is a common provision in state statutes.... It is generally assumed that the sanction is essential if the notice-of-alibi rule is to have practical significance.
>
> * * *
>
> Rule 12.1 will serve a useful purpose even though rule 16 now requires disclosure of the names and addresses of government and defense witnesses. There are cases in which the identity of defense witnesses may be known, but it may come as a surprise to the government that they intend to testify as to an alibi and there may be no advance notice of the details of the claimed alibi. The result often is an unnecessary interruption and delay in the trial to enable the government to conduct an appropriate investigation. The objective of rule 12.1 is to prevent this by providing a mechanism which will enable the parties to have specific information in advance of trial to prepare to meet the issue of alibi during the trial.

The point is well made by Epstein, *Advance Notice of Alibi, supra,* 55 J. Crim. L., Criminology & Police Sci. at 35-36:

> Excluding the evidence has proved effective.... In contrast, the threat of a continuance is not a sanction at all; the prosecution would be granted a continuance on the ground of surprise, even without the statutory direction. If all the defendant risks is a continuance, he will purposely not give notice because the continuance is valuable to him. When it is granted, it comes after the prosecution has presented its evidence and allows it to get cold. The effect of using continuance as a "sanction" is also *contra* the deep concern of the bench and bar with trial delay.

The majority of courts which have considered the question, and the better reasoned decisions, are generally in accord with Epstein's analysis. *See United States v. White, supra,* 583 F.2d at 902 ("Because Walker's testimony was not offered until both parties had rested at the close of a three day jury trial, a continuance [for investigation] would not have been satisfactory."); *United States v. Barron, supra,* 575 F.2d at 757 (If liberal discovery and the prevention of trial delays "are to be effectuated and if the rule is to have any teeth, trial courts must be able to impose sanctions, even the drastic one employed in this case."); *State v. Dodd, supra,* 101 Ariz. at 237, 418 P.2d at 574 (1966) ("Because of defendant's failure to attempt compliance with the notice rule, we find no abuse of discretion in the instant case. Any decision to the contrary would render the force of [the alibi disclosure statute] nugatory."); *Clark v. United States, supra,* 396 A.2d at 999 ("[I]t is generally assumed that such a sanction [i.e. exclusion] is essential if the notice-of-alibi rule is to have any practical significance."); *State v. Davis, supra,* 63 Haw. at 198, 624 P.2d at 381 (exclusion essential for rule to have practical significance); *State v. Christensen, supra,* 323 N.W.2d at 223 ("[A] delay in the proceeding would create a substantial time interval between the presentation of the State's evidence and the defendant's evidence of alibi. This not only disrupts the judicial process but may also affect the jurors and the outcome of the trial."); *State v. Lindsey, supra,* 284 N.W.2d at 374 ("[W]e recognize that the trial court had no other meaningful sanctions at its disposal; it was too far into trial to consider a continuance . . . ."); *State v. Woodard,* 102 N.J. Super. 419, 426-27, 246 A.2d 130, 134 (1968), *cert. denied,* 395 U.S. 938, 89 S. Ct. 2004, 23 L. Ed. 2d 453 (1969) ("To have waived the provisions of the rule, at that point in the trial [during cross-examination of the state's last witness], would have been highly unfair and prejudicial to the State — and an adjournment to allow the State to investigate the witness . . . would not have cured this eleventh hour application."); *State v. Flohr, supra,* 301 N.W.2d at 372 ("Quite simply, a defendant with an absolute right to submit evidence withheld

from discovery has little to lose by being uncooperative. Alternative sanctions [to exclusion] appear less effective and often entail delay and expense, curtailment of discovery, and even potential constitutional problems."); *State ex rel. Simos v. Burke, supra,* 41 Wis. 2d at 129, 163 N.W.2d at 182 (Pretrial notice of alibi "avoids mid-trial state motions for adjournment on the ground of surprise to permit investigation of alibi claims. The interests of the prosecution, defense and public are served by such facilitating of orderly, uninterrupted trials for the seeking of the truth and the protection of the rights of all concerned.").

Months before trial in the case *sub judice* Taliaferro knew Rich's identity, his mother's address, and the date of trial and had been asked by counsel about witnesses. Without any justifying excuse, Taliaferro did not disclose Rich as an alibi witness until the close of the State's case in a jury trial. The trial court acted well within the bounds of its discretion in excluding Rich's testimony and in not continuing the case.

> *Judgment of the Court of Special Appeals affirmed.*
> *Costs to be paid by the petitioner.*

*Eldridge, J., dissenting:*

The Supreme Court of the United States has twice expressly reserved the question of "[w]hether and to what extent a State can enforce" a notice-of-alibi rule "by excluding relevant, probative evidence" offered by the defendant, recognizing that it "is a question raising Sixth Amendment issues." *Williams v. Florida,* 399 U.S. 78, 83 n. 14, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). *See Wardius v. Oregon,* 412 U.S. 470, 472 n. 4, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). Under circumstances like those in this case, where the sanction of exclusion for violating a notice-of-alibi rule operates to prevent a criminal defendant from calling his only alibi witness and thus from presenting his only defense to the charges, where the violation was not deliberate, and where any prejudice to the prosecution could have been

cured by a short continuance, the application of a notice-of-alibi rule's exclusionary sanction violates the Sixth and Fourteenth Amendments to the United States Constitution. The majority, in holding that the state procedural rule overrides the petitioner's right to call his only witness, has denied petitioner the most fundamental constitutional right that exists in a criminal case — the right to present a defense.

## I.

In order to understand better the full impact of the majority's position, it is necessary to recount some of the critical facts in this case.

The petitioner, Vernon Taliaferro, was indicted for robbery with a deadly weapon, use of a handgun in the commission of a felony, and lesser charges which were nol prossed. On the first day of his trial, Wednesday, May 21, 1980, the petitioner requested a continuance in order that one of his witnesses, Carol Bellamy (a former girl friend), could be summonsed to testify. Defense counsel stated that she had been unable to reach Bellamy before the trial, although she had had Bellamy's telephone number for some time, and that she had only obtained her address on the day of the trial. Even though the State had no objection to a continuance, the trial judge denied Taliaferro's request, stating: "The defendant has waited until the day of the trial to give his counsel an address of a witness which is not, in my view, a reason to continue a case, so I will not continue it." [1]

On the next day of his trial, Thursday, May 22, 1980, the petitioner sought to call Edward Rich, who was then present in the courthouse, as an alibi witness. The State objected on the ground that Taliaferro had failed to name Rich as an alibi witness in response to the State's request made pur-

---

[1]. This ruling, although not before this Court, should be kept in mind in considering petitioner's ability to present his defense.

suant to Maryland Rule 741. The State claimed that it had
been surprised by the last-minute proffer of Rich, was
unprepared to cross examine him, and had had no opportu-
nity to investigate his background. The State indicated,
however, that it would have no objection to Rich's testifying
if the case were continued until the following Monday, May
26.[2]

The record shows that the trial judge appeared disposed
towards continuing the case until he learned that the terms
of six of the jurors were to expire on Friday, and that the
following Monday was a federal holiday. Nevertheless,
Monday was not a state holiday, and the court was required
to be open on that day. The judge feared that by resuming
the case on Monday, he might disrupt the long-weekend
plans of the six jurors whose terms were to expire. The judge,
however, made no inquiries to determine whether this fear
had any basis. He made no effort to ascertain whether a brief
continuance would inconvenience a single juror. Instead, the
trial judge simply refused to continue the trial, and ruled
that Rich would not be permitted to testify as a sanction for
Taliaferro's violation of Rule 741.[3]

---

2. The majority suggests that the prosecuting attorney's statement, that
a continuance until Monday, May 26, would be sufficient, related only to the
time within which Rich's background and connection with the defendant
could be checked. The prosecuting attorney, however, was in addition
referring to "all sorts of things I can't do on the spur of the moment," before
responding: "Monday. That would give me adequate time." Later the
prosecuting attorney referred to "put[ting] the case off for a few more days,"
and he unequivocally stated: "I am willing to go along with that."

The record clearly shows, therefore, that the State believed that a short
continuance would be sufficient and would cure any prejudice caused by the
violation of the discovery rule. Although the majority appears to sec-
ond-guess the prosecution in this regard, I believe that the attorney for the
prosecution is the best judge of how much time he would need to be prepared
to cross-examine the defendant's witness.

Moreover, the trial judge's ruling excluding the witness was not based
upon the judge's view that a short continuance would not be sufficient for
the prosecution. Instead it was based upon the judge's speculation that
jurors might be inconvenienced by a short continuance.

3. The majority speculates that because Prince George's County adjoins
the District of Columbia and many of its residents are employed by the
federal government, the jurors "might have made plans for the three day
federal holiday weekend." Later in the opinion, the majority somehow
becomes more certain, referring to "plans which those jurors likely had
made for the three day federal holiday." As pointed out above, however, the

The trial judge did not find that Taliaferro's violation of Rule 741 was deliberate; instead he found that the defendant was not "diligent" and "hadn't made any real effort, except yesterday, to locate the witness."

After the trial judge's decision excluding Rich as a witness, defense counsel requested a ruling that the State not be permitted to impeach Taliaferro with his prior criminal record if he decided to take the stand in his own defense. The judge denied counsel's request, and the defendant never took the stand.

Ultimately, then, Taliaferro was unable to present any defense to the charges against him. Taliaferro's defense had been alibi, and he had sought to introduce the testimony of two witnesses and to testify himself. Because of the trial judge's evidentiary rulings, Taliaferro's "defense" was reduced to an attack on the credibility of the State's only witness against him.[4]

---

trial judge made no effort to determine whether any juror had holiday plans for Monday or for any other day. As far as this record shows, not a single juror would have been inconvenienced by a resumption of the trial on Monday.

Moreover, the record fails to disclose that any of the twelve jurors in the case were federal government employees. The total population of Prince George's County is 665,071. Bureau of the Census, U.S. Dep't of Commerce, No. PC80-1-A22, *1980 Census of Population — Characteristics of the Population: Number of Inhabitants, Maryland* 22-12 (1982). Of this total number, approximately 450,000 persons are over the age of 18 and thus eligible for jury duty. Office of Planning Data, Md. Dep't of State Planning, *Maryland, 1980 Population By Age and Sex* 28 (1982). I have been informed by an official in the Bureau of Economic Analysis, United States Department of Commerce, that 71,912 Prince George's County residents are federal government civilian employees. In light of these figures, there is no basis for drawing an inference, based solely on Prince George's County's proximity to the District of Columbia, that the six jurors whose terms were to expire were likely federal employees.

**4.** It is noteworthy that at an earlier stage of the trial, the trial judge had not anticipated that rulings on the admissibility of evidence would be such a major factor in the trial. On the first day of the trial, the judge announced that he was "personally acquainted" with the family of the robbery victim, having known them for twenty years. "I know where they live, have been in their house; they have been in my house." But the judge concluded that he would have "no problem" trying the case "since it is a jury case, and my function, basically, is to determine the admissibility of evidence." If the trial judge had anticipated that his rulings on the admissibility of evidence would determine whether or not a defense would be offered to the jury, his decision concerning the matter of disqualification might have been different.

## II.

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." In *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Supreme Court held that the Sixth Amendment rights to offer testimony of witnesses and to compulsory process are applicable to state criminal proceedings, and that a Texas statute prohibiting accomplices from testifying for each other violated those rights. The Court said (388 U.S. at 19):

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law."

*See also In Re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (recognizing the right to offer testimony as one of several rights which "are basic in our system of jurisprudence.")

In *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), Justice Powell, for the Court, wrote (410 U.S. at 294, emphasis supplied):

> "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses *and to call witnesses in one's own behalf have long been recognized as essential to due process."*

In *Chambers,* the Court held that a criminal defendant was impermissibly denied these rights by a Mississippi voucher rule which had precluded him from calling witnesses to discredit one of his own witnesses whose testimony had been damaging.

In the present case, as a result of the trial judge's application of a nonmandatory sanction pertaining to a mere procedural rule, the defendant was precluded from calling his only alibi witness, and thus from presenting his only defense to the state's accusations.[5] Moreover, the violation of the rule was not deliberate, and any prejudice to the prosecution was concededly curable by a short continuance.[6] Finally, the record fails to show that anyone would have been inconvenienced by a short continuance. This application of a state procedural rule cannot be squared with the mandate of *Chambers, Washington* and *In Re Oliver.* Under the teaching of those cases, Taliaferro was convicted in violation of the Sixth and Fourteenth Amendments.

---

**5.** The fact that Rich was the only witness which Taliaferro could have called contrasts with situations in which, for example, a defendant has called numerous witnesses, has presented a substantial defense and seeks to introduce "needlessly cumulative" evidence. United States v. Davis, 639 F.2d 239, 244 (5th Cir. 1981). *See also* United States v. White, 583 F.2d 899 (6th Cir. 1978) (testimony of two alibi witnesses admitted, testimony of third alibi witness excluded for non-compliance with rule); Commonwealth v. LaFrennie, 13 Mass.App. 977, 432 N.E.2d 535 (1982) (same); Commonwealth v. Vecchiolli, 208 Pa.Super. 483, 244 A.2d 96 (1966) (same). In such cases, the ruling, although erroneous, may well be harmless beyond a reasonable doubt. This case is also distinguishable from those in which the proffered evidence is of limited probative value. *See, e.g.,* United States v. Fitts, 576 F.2d 837 (10th Cir. 1978) (alibi was only for two out of four alleged attempts to cash stolen money orders); United States v. Smith, 524 F.2d 1288 (D.C.Cir. 1975) (alibi given for only one of three alleged heroin sales); Jensen v. State, 36 Wis.2d 598, 153 N.W.2d 566, *modified,* 36 Wis.2d 598, 154 N.W.2d 769 (1967) (alibi was for only two of three counts). Here, however, the constitutional violation could not possibly be considered harmless because the ruling resulted in the exclusion of the defendant's only witness and precluded him from presenting his only defense.

**6.** In many jurisdictions, as a prerequisite to excluding the defendant's witness for violation of a notice of alibi or witness discovery rule, the trial judge must find either or both that the defendant's violation of the rule was deliberate and that the prosecution would be significantly prejudiced unless the witness was excluded. *See, e.g.,* United States v. White, 583 F.2d 899 (6th Cir. 1978); Hackett v. Mulcahy, 493 F.Supp. 1329 (D.N.J. 1980); State v. Smith, 123 Ariz. 243, 599 P.2d 199 (1979); Bradford v. State, 278 So.2d 624 (Fla. 1973); State v. Davis, 63 Hawaii 191, 624 P.2d 376 (1981) (exclusion proper when defense counsel concedes rule violation was a deliberate,

The majority opinion rejects Taliaferro's constitutional argument, stating that "state courts and lower federal courts have decided that the exclusion of alibi testimony offered by an accused who has violated an alibi discovery requirement does not offend the Sixth Amendment right to have compulsory process for the obtaining of witnesses." Yet none of the cases cited by the majority hold that exclusion pursuant to a notice-of-alibi rule can never be unconstitutional. In fact, courts have held, on constitutional grounds, that a trial judge cannot exclude a defendant's witness merely as a sanction for a discovery rule violation. *United States v. Davis,* 639 F.2d 239, 243 (5th Cir. 1981) ("We hold, therefore, that the compulsory process clause of the sixth amendment forbids the exclusion of otherwise admissible evidence solely as a sanction to enforce discovery rules or orders against criminal defendants). *See United States v. Perez,* 648 F.2d 219 (5th Cir. 1981) (error to have excluded witness because of violation of discovery order to reveal reports of physical examinations, but error was harmless). The United States Court of Appeals for the Seventh Circuit has recently held that it is constitutionally impermissible to apply a notice-of-alibi rule so as to preclude the defendant from testifying in his own defense as to an alibi. *Alicea v. Gagnon,* 675 F.2d 913 (7th Cir. 1982).

Other courts have held that specific applications of preclusion sanctions violate a defendant's constitutional rights. The United States Court of Appeals for the Second Circuit, for example, held that it is unconstitutional to

tactical decision); State v. Bright, 229 Kan. 185, 623 P.2d 917 (1981); State v. Bias, 393 So.2d 677 (La. 1981); Commonwealth v. Edgerly, 372 Mass. 337, 343, 361 N.E.2d 1289 (1977); People v. Merritt, 396 Mich. 67, 238 N.W.2d 31 (1976); Williams v. State, 97 Nev. 1, 620 P.2d 1263 (1981); Founts v. State, 87 Nev. 165, 483 P.2d 654 (1971); State v. Smith, 50 Ohio St.2d 51, 362 N.E.2d 988 (1977); State v. Silva, 118 R.I. 408, 374 A.2d 106 (1977); State v. Martin, 165 Wash. 180, 4 P.2d 880 (1931); State v. Grant, 10 Wash.App. 468, 519 P.2d 261 (1974).

Furthermore, several jurisdictions consider the value of the precluded testimony to the defendant's case. *See, e.g.,* State v. Martin, 410 P.2d 132, 137 (Ariz.App. 1966); Commonwealth v. LaFrennie, 13 Mass.App. 977, 432 N.E.2d 535 (1982); State v. Lindsey, 284 N.W.2d 368 (Minn. 1979); Eckert v. State, 96 Nev. 96, 605 P.2d 617 (1980); Founts v. State, *supra,* 87 Nev. 165; State v. Miner, 128 Vt. 55, 258 A.2d 815, 825 (1969).

preclude a defendant from calling witnesses and presenting an insanity defense when formal notice was the only deficiency in complying with the applicable notice rule, and when any prejudice could have been ameliorated by lesser means than exclusion. *Ronson v. Commissioner of Cor. of State of N.Y.,* 604 F.2d 176 (2d Cir. 1979). The court's reasoning is applicable to the instant case (604 F.2d at 178-179):

> "While a defendant's right to call witnesses on his behalf is not absolute, a state's interest in restricting who may be called will be scrutinized closely. . . . In this regard, maximum 'truth gathering,' rather than arbitrary limitation, is the favored goal. . . . Given that a grant of continuance would have served to minimize any prejudice to the state resulting from the lack of formal notice, the refusal of the trial court to exercise discretion to allow [the defendant] to call [his psychiatrist] and to present an insanity defense, then, was a violation of Ronson's sixth amendment rights."

*See also* the well-reasoned opinion of the United States District Court in the same case, *Ronson v. Commissioner of Correction,* 463 F.Supp. 97 (S.D.N.Y. 1978).

The United States District Court for the District of New Jersey issued a writ of habeas corpus where a prisoner was convicted after a trial in which he was not permitted to introduce alibi testimony. *Hackett v. Mulcahy,* 493 F.Supp. 1329 (D.N.J. 1980). Although the defendant's noncompliance was, as the majority suggests, "technical," the court did not focus on that factor. Instead, the court began by noting that "[t]he right to present witnesses in one's defense is a fundamental right guaranteed by the Sixth Amendment." *Id.* at 1335. After reviewing the facts, the court concluded that "there is no indication that petitioner waived his constitutional right to present the alibi testimony of witnesses . . . The trial court's refusal to permit the introduction of evidence crucial to petitioner's case visited a

terrible punishment on . . . [him]. He was deprived of the right to defend himself." *Id.* at 1340.

The Supreme Court of Washington has indicated that excluding defense witnesses as a sanction for noncompliance with a notice requirement may be unconstitutional. In *State v. Martin,* 165 Wash. 180, 187, 4 P.2d 880 (1931), the court stated:

> "If, in such a case as this, the state should claim surprise [resulting from noncompliance], it might become the duty of the court, not to declare that the appellant's evidence should not be received, but that the state should have a reasonable opportunity to prepare itself against surprise; for the constitution, by guaranteeing an accused person the right to defend himself and to compel the attendance of witnesses by the court's own process, necessarily gives him the right to have attending witnesses heard."

Many other cases have recognized the existence of constitutional problems in applying the preclusion sanction for violation of notice-of-alibi provisions. *See, e.g., United States v. Barron,* 575 F.2d 752, 757 n. 5 (9th Cir. 1978); *Brown v. Wainwright,* 459 F.Supp. 244, 247 (M.D. Fla. 1978); *People v. Jackson,* 71 Mich.App. 395, 399, 249 N.W.2d 132 (1976); *Commonwealth v. Edgerly,* 372 Mass. 337, 343, 361 N.E.2d 1289 (1977); *State ex rel. Sikora v. District Ct.,* 154 Mont. 241, 462 P.2d 897, 903 (1969); *People v. Morales,* 37 N.Y.2d 262, 269-270, 372 N.Y.S.2d 25, 333 N.E.2d 339 (1975); *State v. Smith,* 50 Ohio St.2d 51, 52 n. 2, 362 N.E.2d 988 (1977); *State v. Wolfe,* 273 Or. 518, 525, 542 P.2d 482, 486 (1975); *State v. Silva,* 118 R.I. 408, 374 A.2d 106, 108 (1977).[7]

---

7. Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), held that notice of alibi provisions do not violate the Fifth Amendment's self-incrimination clause, although, as previously discussed, the Court reserved ruling on the sanction of excluding the defendant's evidence. Nevertheless, two states have declared notice-of-alibi provisions violative of state constitutional privileges against self-incrimination. In Alaska, the Supreme Court held that the state's notice of alibi provision violated that state's constitutional privilege against self-incrimination to the extent that

While some of the above-cited cases have left the constitutional issue undecided, none of them has involved a situation as extreme as that in the present case, where the judge excluded the defendant's only witness, thus precluding the defendant from presenting any defense, without finding that the failure to comply was deliberate, and where any disadvantage to the prosecution was admittedly curable by a continuance.

In addition, commentators have taken the position that exclusion of the defense witnesses, as a sanction for violating a discovery rule, presents serious constitutional problems. Professor Clinton, for example, concludes that

> "applying the preclusion sanction to the accused would in most cases be constitutionally suspect. The

---

the provision required more than mere notice of intent to present an alibi defense. The court held that beyond simple notice, the state could not compel the defendant to disclose any details of his defense such as who his witnesses are and where he was if he was not at the crime scene. Scott v. State, 519 P.2d 774 (Alaska 1974). Similarly, in Allen v. Superior Court, 18 Cal.3d 520, 134 Cal. Rptr. 774, 557 P.2d 65, 67 (1976), the Supreme Court of California held that the self-incrimination clause of the constitution of that state prohibits compelled pretrial disclosure to the prosecution by a defendant if the disclosure " 'conceivably might lighten the prosecution's burden of proving its case in chief.' "

In an earlier decision, the California Supreme Court struck down a judicially-created notice of alibi requirement, thereby rejecting the efforts of some lower courts in that state to create a common-law notice requirement. Reynolds v. Superior Court, 12 Cal.3d 834, 117 Cal. Rptr. 437, 528 P.2d 45 (1974). In explaining its hesitation to create or sanction notice of alibi measures, the court gave particular weight to potential constitutional problems:

> "[C]omplex and closely balanced questions of state and federal constitutional law are presented by a notice-of-alibi order.... [O]ur decision that it would be inappropriate for us to declare judicially a notice-of-alibi rule does arise from our sensitivity to the constitutional constraints on the power of the courts or the Legislature to require a defendant in a criminal case to reveal to the prosecution in advance of the normal course of trial tangible or intangible trial-related evidence or other material." Id. at 837.

The Maryland Declaration of Rights also contains a provision guaranteeing citizens the right against self-incrimination. Article 22 states: "That no man ought to be compelled to give evidence against himself in a criminal case." This Court has never ruled on the issue of whether Rule 741 may be partially invalid because it compels criminal defendants to give evidence against themselves contrary to Article 22. Because the parties have not raised the issue, it is not before us in this case, and I express no views on the matter.

application of the preclusion sanction ... should survive constitutional challenge only when the evidence excluded is not very important to the accused or, in the usual case, where other means of effectuating the state's interest are practically unavailable." Clinton, *The Right to Present a Defense: An Emergent Constitutional Guarantee in Criminal Trials,* 9 Ind. L. Rev. 711, 839 (1976).

*See also* Westen, *The Compulsory Process Clause,* 73 Mich. L. Rev. 71, 137-138 (1974); Note, *The Preclusion Sanction — A Violation of the Constitutional Right to Present a Defense,* 81 Yale L.J. 1342 (1972). *See generally* Note, *Prosecutorial Discovery Under Proposed Rule 16,* 85 Harv. L. Rev. 994 (1972). The American Bar Association, II *ABA Standards for Criminal Justice,* § 11-4.7 (a) (2d ed. 1980), rejects the exclusion sanction on both policy and constitutional grounds.

If excluding a criminal defendant's witness for a violation of a discovery rule ever infringes upon the Sixth Amendment, it does so in the present case. The defendant's only defense was alibi, and the excluded witness was his only alibi witness. The prosecution's case was based upon the identification testimony of a single witness, who had initially identified the photograph of someone else as the perpetrator of the crime, who was a police informant, and who had a criminal record. The only issue before the jury should have been to decide which of two witnesses was telling the truth — the prosecution's identification witness or the defendant's alibi witness. But, because of the trial judge's ruling excluding the defendant's evidence as a sanction for violating a discovery rule, the jury heard only the prosecution's witness. To reiterate, the violation of the discovery rule was not deliberate and was admittedly curable by a short continuance. Under these circumstances, the defendant simply did not receive a fair trial.

The majority takes the position that the decision to prohibit the defendant's witness from testifying was within "the discretion" of the trial court. In my view this is true only if

a trial court has "discretion" to abridge the Sixth Amendment right to present a defense. I would reverse the conviction and award Taliaferro a new trial.

Judges Cole and Davidson have authorized me to state that they concur with the views expressed herein.